# Exhibit 2

# OneBOSS SaaS Agreement

This SaaS Agreement ("Agreement") is entered into as of November 15th, 2025 by and between:

OneBOSS.io, Inc., a Texas corporation with offices at 118 Vintage Park Blvd, Houston, TX 70770 ("OneBOSS"), and

EHP Inc________________, a State______ Entity Type____with offices at
Address__________________________ ("EHP").

OneBOSS and EHP are each a "Party" and together the "Parties."

## 1. DEFINITIONS

**Affiliate.** means any entity that directly or indirectly controls, is controlled by, or is under common control with a Party, including any successor, parent, subsidiary, or acquired entity.

**Active Client.** means an employer record within the Services that, during the applicable billing month, has at least one Connected Provider and has data synchronization enabled.

**Activation Date.** means the calendar date on which an employer first becomes an Active Client.

**Connected Provider.** means a payroll provider for which OneBOSS has established and maintains authenticated read/write API connectivity for a specific Active Client.

**Employee Count.** means, for each Active Client, the number of employees attributed to that employer for PEPM calculation, measured at 12:00:01 a.m. Central Time on the first day of the billing month; for proration, measured on the Activation Date.

**EHP Data.** means all data submitted to, stored in, or generated by the Services for EHP or its clients, including employer, employee, payroll, and benefits information.

**Confidential Information.** has the meaning set forth in Section 8B.2 and includes, without limitation, OneBOSS IP and trade secrets.

**OneBOSS IP.** means the OneBOSS Platform, the Services, software, integrations, algorithms, models, data schemas, user interfaces, documentation, designs, and all related know-how and trade secrets.

**Services.** means the hosted OneBOSS EHP application and related features, including bi-directional payroll integrations, census, xBenefits, enrollment workflows, automated updates, reporting, and APIs made available by OneBOSS.

**System Data.** means operational and usage data, logs, performance metrics, and de-identified or aggregated data generated by the Services.

**Monthly Uptime Percentage.** means, for a calendar month, (Total Minutes in the Month – Downtime Minutes) ÷ (Total Minutes in the Month) × 100, excluding minutes specified in Section 7.1(b).

**Verified Security Incident.** means an actual, confirmed breach of OneBOSS-controlled systems resulting in unauthorized access to unencrypted EHP Data due to OneBOSS's failure to maintain safeguards required by this Agreement.

**Scheduled Maintenance.** means planned maintenance announced at least 24 hours in advance and performed during off-peak hours, not to exceed four (4) hours per month.

**Force Majeure Event.** means an event beyond a Party's reasonable control, including acts of God, natural disasters, war, terrorism, civil unrest, labor actions, governmental orders, power or internet failures not caused by that Party, or failures of third-party providers.

## 2. ACCESS AND OWNERSHIP

**2.1 Access Rights.** Subject to this Agreement, OneBOSS grants EHP a non-exclusive, non-transferable right to access and use the Services for EHP's internal business purposes in serving its employer clients.

**2.2 Restrictions.** EHP shall not (a) sublicense, resell, or provide the Services to third parties except through permitted workflows to its employer clients; (b) reverse engineer, circumvent, or attempt to derive the source code or underlying ideas; or (c) use the Services in violation of law or third-party rights.

**2.3 Ownership.** OneBOSS owns the Services, OneBOSS IP, improvements, and System Data. EHP owns EHP Data. No intellectual property is transferred except the limited access rights expressly granted herein.

**2.4 Feedback.** EHP grants OneBOSS a perpetual, royalty-free license to use feedback to improve the Services.

## 3. SCOPE OF SERVICES

The Services include: (a) direct, bi-directional API integrations with payroll providers; (b) employer and employee enrollment workflows; (c) census pulls, quoting, and xBenefits; (d) automated periodic census synchronization to detect hires, terminations, and changes with configurable review gates; (e) agent commissions calculation; and (f) real-time dashboards, reporting, notifications, and commission tracking.

## 4. COMMERCIAL TERMS AND PRICING

**4.1 Pricing.** The Parties agree to the following fee structure:

| Component | Fee | Description |
|---|---|---|
| Platform Fee | \$2,500/month | Applies while EHP has fewer than 250 Active Clients; drops to \$0/month once ≥ 250 Active Clients. |
| Freemium Prospecting | \$0 | Unlimited census pulls and quoting during prospecting; consideration for exclusivity under Section 4.6. |
| Active Client Connection | \$55 per Connected Provider per month | |
| Per-Employee Add-On (PEPM) | 1–250: \$0.25<br>251–1,000: \$0.18<br>1,001–5,000: \$0.12<br>5,001–15,000: \$0.08<br>>15,000: \$0.05 | Tiered PEPM |

**4.2 Billing and Proration.** OneBOSS invoices monthly for the current month Services including Platform Fee and for all Active Clients and Connected Providers based on Employee Count on the first day of the month. New activations are prorated by (days active ÷ total days in month). Deactivations are billable through month-end. All amounts stated on each invoice are due and payable within fifteen (15) calendar days of the date of the invoice ("Due Date"). An invoice shall be deemed past due after a grace period of fifteen (15) calendar days from the Due Date ("Past Due Date"). Invoices paid after the Past Due Date shall be subject to applicable late charges calculated from the Due Date. EHP agrees to remit payment to OneBOSS. In the event EHP fails to make full payment of undisputed amounts by the Due Date or Past Due Date, as applicable, EHP shall also pay a fixed processing fee in addition to a variable late fee in the amount of the lesser of (i) one and one-half percent (1.5 %) per month or (ii) the maximum lawful monthly rate under applicable state law, of the unpaid balance which amount shall accrue from the Due Date ("Late Fee"). OneBOSS may make billing adjustments for a period of one hundred and twenty (120) calendar days after the date a Service is rendered.

**4.3 Billing Disputes.** (a) Upon disputing any charges, EHP shall: (i) pay all undisputed charges by the Due Date; (ii)present by the Due Date a written statement of amounts disputed in good faith in reasonable detail with supporting documentation; and, (iii) negotiate in good faith to resolve any bona fide dispute within sixty (60) calendar days. (b) Disputed charges resolved in favor of OneBOSS, along with any owed Late Fees per Section 4.2, will be due and payable on the next invoice. Disputed charges resolved in favor of EHP will be credited to EHP on the next invoice and no late fees shall apply.

**4.4 Taxes.** Fees are exclusive of taxes, which EHP shall pay, excluding taxes based on OneBOSS's net income.

**4.5 Payment Default.** A "Payment Default" shall occur if EHP fails to make full and timely payment for all Services as required under this Agreement (except for Billing Disputes as described in 4.5) and such failure remains uncorrected for five (5) calendar days of written notice. In the event of a Payment Default, OneBOSS may, in addition to its rights available to it at law or in equity: (i) suspend any or all Services to EHP upon written notice; (ii) restrict Services in part or in whole; (iii) cease accepting or processing Services; and/or (iv) terminate this Agreement. If this Agreement is terminated because of a Payment Default, such termination shall not affect or reduce EHP's commitments required under this Agreement, if applicable. Suspension of service shall not occur during any active good-faith billing dispute.

**4.6 Exclusivity (Freemium Consideration; Integration Commitment).** In consideration of Freemium Prospecting, OneBOSS shall serve as the exclusive payroll integration platform for all payroll providers used within the EHP ecosystem for which integration is technically feasible and commercially reasonable. Upon EHP's written request identifying a payroll provider, OneBOSS will (a) commence development within five (5) business days after receiving necessary documentation, credentials, and provider cooperation; and (b) complete and make the integration available within fourty-five (45) calendar days, subject to provider accessibility. OneBOSS's framework typically enables completion of most standard integrations within approximately three (3) business days once access is granted (a typical expectation, not a guarantee). Provider-side delays, API withdrawal, throttling, credential or onboarding queues, refusals, and other factors outside OneBOSS's reasonable control do not constitute breach. If the integration is not available in production within ninety (90) days, EHP shall give written notice and confer in good faith with OneBOSS for at least fifteen (15) business days. If still incomplete with no agreed extension, EHP may temporarily engage a third-party integrator solely for that provider until OneBOSS delivers its production integration; EHP bears interim costs and will transition back to OneBOSS within thirty (30) days after completion. Except as permitted above, EHP shall not use or authorize third-party payroll integrators for providers supported or integrated by OneBOSS. Material breach converts Freemium access to standard billable usage retroactive to the breach period and entitles OneBOSS to seek injunctive relief.

## 5. TERM AND TERMINATION

**5.1 Term.** Initial term is twelve (12) months from the Effective Date; auto-renews for successive one-year terms unless either Party gives sixty (60) days' written notice prior to renewal. Either Party may terminate for material breach uncured thirty (30) days after written notice. OneBOSS may suspend Services for non-payment (> 30 days past due) or security risk, reinstating upon cure. Upon termination, access ceases; upon request within thirty (30) days, OneBOSS will provide a final export of EHP Data in a commercially reasonable format. Accrued but unpaid fees remain due.

**5.4 Other Defaults and Remedies.**

**(a) Definition of "Other Default."**
An "Other Default" occurs when either Party fails to perform or observe any **material term or obligation** under this Agreement (excluding payment obligations) and such failure remains uncured for **fifteen (15) calendar days** after written notice from the non-defaulting Party describing the breach in reasonable detail.

**(b) Remedies for Other Default by EHP.**
If EHP commits an Other Default and fails to cure within the fifteen-day period, OneBOSS may, in addition to any other rights or remedies available at law or equity:

1. Suspend or restrict any or all Services (in whole or in part);
2. Cease accepting or processing new client or provider integrations for EHP; and/or
3. Terminate this Agreement for cause upon written notice.

Termination under this Section does not relieve EHP of accrued payment obligations or of any **minimum usage commitments**, if applicable.

**(c) Remedies for Other Default by OneBOSS.**
If OneBOSS commits an Other Default and fails to cure within the fifteen-day period, EHP's sole and exclusive remedies shall be (i) to receive the express remedies or service-level credits provided in this Agreement, and (ii) to recover proven **direct damages** subject to the limitations of Section 11 (Limitation of Liability).

**(d) Immediate Suspension for Unlawful or Harmful Use.**
OneBOSS may immediately suspend or terminate any portion of the Services without prior notice if EHP (or any of its users, agents, or clients):

1. uses the Services for any unlawful purpose or in any unlawful manner;
2. attempts to gain unauthorized access to any system or data of OneBOSS or another customer; or
3. engages in activity that materially disrupts or degrades the performance or security of the Services or any connected system.

OneBOSS will notify EHP as soon as practicable after any such suspension and will reinstate Services promptly once the offending activity ceases.

## 6. DATA SECURITY AND PRIVACY

OneBOSS shall maintain appropriate administrative, technical, and physical safeguards for EHP Data, including encryption in transit and at rest, role-based access, audit logging, and incident response. OneBOSS processes EHP Data solely to provide and support the Services and may use de-identified or aggregated System Data to improve performance.

Subprocessors are bound by written obligations no less protective than this Agreement. OneBOSS shall notify EHP without undue delay upon confirming a breach of security leading to unauthorized disclosure of EHP Data and cooperate in remediation.

## 7. SERVICE LEVELS, SUPPORT, AND PROVIDER DEPENDENCIES

**7.1 Availability (SLA).** OneBOSS will use commercially reasonable efforts to make the Services available with a Monthly Uptime Percentage of at least 99.999%. Exclusions: (a) Scheduled Maintenance; (b) emergency maintenance; (c) Force Majeure Events; (d) internet/DNS/ISP failures outside OneBOSS's control; (e) third-party service or payroll-provider failures; (f) EHP actions or misuse; and (g) authorized suspensions. Measurement is at the platform edge of OneBOSS's managed infrastructure.

**7.2 Support.** Business-hours support (Mon–Fri, 7:00 a.m.–7:00 p.m. Central Time) via phone/email/chat; priority incidents addressed 24×7 on a commercially reasonable basis.

**7.3 Changes.** OneBOSS may enhance or modify the Services without material degradation of core functionality; material deprecations require sixty (60) days' notice.

**7.4 Provider Dependencies.** Certain functions depend on external provider APIs or systems. OneBOSS is not responsible for delays, unavailability, or errors originating from those providers. Typical integrations complete within approximately three (3) business days once access is provided; provider-side delays are outside OneBOSS's control.

| Monthly Uptime % | Credit (% of monthly fees) |
|---|---|
| 99.999 – 99.9 | 2% |
| 99.9 – 99.5 | 5% |
| 99.5 – 99.0 | 10% |
| 99.0 – 98.0 | 15% |
| < 98.0 | 25% |

EHP must request credits in writing within thirty (30) days after month-end. Credits are the sole and exclusive remedy for SLA failures and are capped at 25% of annual fees. If uptime is below 98% for two consecutive months, EHP may terminate for cause on thirty (30) days' notice and receive a pro-rata refund of prepaid, unused fees.

## 8. CONFIDENTIALITY

Each Party will protect the other's Confidential Information with at least the same degree of care it uses to protect its own similar information (not less than reasonable care) and will use it only to perform this Agreement. Disclosure is permitted to Affiliates, employees, contractors, and advisors bound by confidentiality. Either Party may seek injunctive relief for threatened or actual breach.

## 8A. INTELLECTUAL PROPERTY PROTECTION AND NON-REVERSE-ENGINEERING

All OneBOSS IP is and remains the exclusive property of OneBOSS. EHP and its Affiliates (including any software companies under common ownership or control) and contractors shall not (a) reverse engineer, decompile, disassemble, or otherwise attempt to derive the

source code, architecture, structure, or underlying ideas of the Services or OneBOSS IP; (b) create, develop, or assist any third party to create or develop any product or service that competes with, replicates, or is derived from the OneBOSS Platform or any component thereof; (c) use outputs, interfaces, or metadata from the Services to build or train a competing platform, application, or AI system; or (d) copy or reproduce any portion of OneBOSS IP except as expressly permitted in writing by OneBOSS. However, nothing in this Agreement shall restrict EHP or its Affiliates from independently developing products or services that may compete with OneBOSS, provided no OneBOSS Confidential Information is used in such development. Unauthorized use or disclosure will cause irreparable harm; OneBOSS may seek injunctive relief without bond. These obligations survive in accordance with the terms of the previously executed **Non-Disclosure and Confidentiality Agreement** executed September 23, 2025. "Each Party's confidentiality obligations survive for three (3) years after termination. Trade secret obligations survive as long as such information qualifies as a trade secret."

8A. OneBOSS IP remains owned by OneBOSS. EHP shall not reverse engineer, copy, or misuse OneBOSS IP. However, nothing in this Agreement shall restrict EHP or its Affiliates from independently developing products or services that may compete with OneBOSS, provided no OneBOSS Confidential Information is used in such development. Obligations related to non-reverse-engineering survive for the Term plus two years.

## 8B. CONFIDENTIALITY AND NON-DISCLOSURE (INCORPORATED NDA)

The Parties may have executed a Non-Disclosure Agreement ("NDA"). The provisions of this Section supersede and extend those protections to ensure continuous coverage. "Confidential Information" includes all proprietary, technical, and business information, including source code, architecture, AI logic, workflows, trade secrets, integration methods, product plans, pricing, customer data, and any information a reasonable person would understand to be confidential. Each Party shall hold such information in strict confidence, use it only for this Agreement, and disclose it only to personnel or Affiliates with a need to know under equivalent obligations. Confidentiality survives termination indefinitely for trade secrets and for five (5) years for other Confidential Information. Upon request or termination, the receiving Party shall return or destroy Confidential Information (one archival copy permitted for compliance). The disclosing Party may seek injunctive relief without bond.

## 9. AUDIT AND VERIFICATION

No more than once per rolling twelve (12) months, and on at least fifteen (15) days' notice, OneBOSS may verify Active Client counts, Connected Providers, and Employee Counts via system logs/metadata. Audits will not access personal data beyond what is necessary for verification. If an underpayment greater than five percent (5%) is found, EHP will pay the shortfall; if greater than ten percent (10%), EHP will also pay reasonable audit costs.

## 10. WARRANTIES

**10.1 Authority and Compliance.** Each Party represents and warrants that it has full corporate power and authority to enter into and perform this Agreement and that its execution and performance do not conflict with any other agreement or obligation.

**10.2 OneBOSS Warranties.** OneBOSS represents and warrants that (a) it owns or has all necessary rights to provide the Services; (b) the Services, when used in accordance with this Agreement, will perform materially in accordance with the documentation; (c) the Services do not contain malicious code or intentional backdoors; and (d) OneBOSS will provide the Services in a professional and workmanlike manner consistent with generally accepted industry standards.

**10.3 Exclusions.** The warranties in Section 10.2 do not apply to defects or errors caused by EHP or its users, modifications not performed by OneBOSS, use not in accordance with the documentation, or failures of third-party systems, provider APIs, or external networks beyond OneBOSS's control.

**10.4 Disclaimer.** EXCEPT AS EXPRESSLY PROVIDED IN THIS AGREEMENT, THE SERVICES AND ALL RELATED MATERIALS ARE PROVIDED "AS IS." ONEBOSS DISCLAIMS ALL OTHER WARRANTIES, WHETHER EXPRESS, IMPLIED, STATUTORY, OR OTHERWISE, INCLUDING MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, AND NON-INFRINGEMENT. ONEBOSS DOES NOT WARRANT UNINTERRUPTED OR ERROR-FREE OPERATION OR THAT ALL DEFECTS WILL BE CORRECTED.

## 11. INDEMNIFICATION AND LIMITATION OF LIABILITY

**11.1 Mutual Indemnification.** Each Party (the "Indemnifying Party") shall defend, indemnify, and hold harmless the other Party, its Affiliates, and their officers, directors, employees, and agents (the "Indemnified Parties") from and against any third-party claim, demand, action, or proceeding to the extent arising from or related to (a) the Indemnifying Party's gross negligence or willful misconduct; (b) its material breach of this Agreement; or (c) its violation of applicable law, including data-protection or privacy law. The Indemnified Party must provide prompt written notice and reasonable cooperation; the Indemnifying Party shall have sole control of the defense and settlement (no admission or obligation imposed on the Indemnified Party without its prior written consent).

**11.2 Data-Security and Privacy Indemnity by OneBOSS.** Subject to the exclusions below, OneBOSS shall defend, indemnify, and hold harmless EHP and its Indemnified Parties from third-party claims (including regulatory actions) arising out of a Verified Security Incident directly caused by OneBOSS's failure to maintain safeguards required by this Agreement, to the extent resulting in unauthorized disclosure of EHP Data. This indemnity does not apply to incidents arising from EHP misuse, failure to secure credentials or endpoints, or breaches originating from third-party payroll providers or systems outside OneBOSS's control. Upon a Verified Security Incident, OneBOSS shall notify EHP without undue delay, mitigate at its expense, and cooperate in legally required notifications.

**11.3 Intellectual-Property Indemnity by OneBOSS.** OneBOSS shall defend and indemnify EHP against third-party claims alleging that the Services infringe U.S. intellectual property rights. OneBOSS will, at its option and expense, (a) procure the right for EHP to continue using the Services, (b) replace or modify the Services so they are non-infringing and substantially equivalent, or (c) if (a) and (b) are not commercially reasonable, terminate the affected functionality and refund prepaid, unused fees. This Section does not apply to claims arising from EHP Data, combinations not supplied by OneBOSS, or modifications by anyone other than OneBOSS.

**11.4 Exclusion of Indirect Damages.** IN NO EVENT SHALL EITHER PARTY BE LIABLE FOR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL, EXEMPLARY, OR PUNITIVE DAMAGES, INCLUDING LOST PROFITS, REVENUE, OR DATA, EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

**11.5 Limitation of Liability.** EXCEPT AS EXPRESSLY PROVIDED IN THIS AGREEMENT, ONEBOSS MAKES NO WARRANTIES OTHER THAN THOSE STATED IN SECTION 10 AND SPECIFICALLY DISCLAIMS ANY IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR NON-INFRINGEMENT. EXCEPT FOR (a) EHP'S PAYMENT OBLIGATIONS, (b) EITHER PARTY'S BREACH OF CONFIDENTIALITY, (c) EHP'S BREACH OF SECTION 4.6 (EXCLUSIVITY), OR (d) EITHER PARTY'S INDEMNIFICATION OBLIGATIONS UNDER SECTION 11, **EACH PARTY'S TOTAL CUMULATIVE LIABILITY UNDER THIS AGREEMENT SHALL NOT EXCEED THE FEES PAID OR PAYABLE BY EHP TO ONEBOSS FOR THE TWELVE (12) MONTHS PRECEDING THE EVENT GIVING RISE TO LIABILITY.** IN NO EVENT SHALL EITHER PARTY BE LIABLE FOR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, EXEMPLARY, SPECIAL, OR PUNITIVE DAMAGES (INCLUDING LOST PROFITS, REVENUE, OR DATA), EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THE PARTIES AGREE THAT THE REMEDIES AND LIMITATIONS OF LIABILITY SET FORTH HEREIN ARE FUNDAMENTAL ELEMENTS OF THE BARGAIN AND THAT, **TO THE EXTENT ANY DAMAGES OR CREDITS ARE LIQUIDATED OR LIMITED BY THIS AGREEMENT, SUCH AMOUNTS CONSTITUTE A REASONABLE ESTIMATE OF THE HARM OR LOSS.**

**11.6 Independent Remedies; Survival.** The indemnities in this Section are independent of and in addition to other remedies and survive termination.

## 12. GOVERNING LAW AND VENUE

This Agreement is governed by and construed in accordance with the laws of the State of Texas, without regard to conflict-of-law principles. The state and federal courts located in Harris County, Texas shall have exclusive jurisdiction and venue. Each Party waives the right to a jury trial.

## 13. MISCELLANEOUS

**13.1 Assignment.** Neither Party may assign this Agreement without the other Party's prior written consent, except to an Affiliate or in connection with a merger, reorganization, or sale

of substantially all assets, provided the assignee is not a direct competitor and assumes all obligations.

**13.2 Notices.** Notices must be in writing and delivered by hand, reputable courier, or email with confirmation to the addresses first listed above (or as updated by notice).

**13.3 Force Majeure.** Neither Party is liable for failure or delay due to a Force Majeure Event (excluding payment obligations).

**13.4 Entire Agreement; Amendments.** This Agreement constitutes the entire agreement between the Parties on the subject matter and supersedes prior or contemporaneous agreements. Amendments must be in a writing signed by both Parties.

**13.5 Severability; No Waiver.** If any provision is unenforceable, it will be modified to the minimum extent necessary; the remainder remains in effect. Failure to enforce is not a waiver.

**13.6 Counterparts; E-Signatures.** This Agreement may be executed in counterparts and via electronic signatures, each deemed an original.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Effective Date.

| ONEBOSS.IO, INC. | EHP Inc |
|---|---|
| By: Stephen Myers | By: Slava Zatuchny<br>Slava Zatuchny (Nov 15, 2025 16:51:14 EST) |
| Name: Stephen Myers<br>Title: CEO<br>Date: 11/15/2025 | Name: Slava Zatuchny<br>Title: CEO<br>Date: 11/15/2025 |