# TRANSITION AND SEPARATION AGREEMENT

This Transition and Separation Agreement (this "Agreement") is entered into as of the date of the last signature below (the "Effective Date") between EHP Inc, a Delaware corporation with its principal place of business at 2933 W Cypress Creek Rd, 202, Fort Lauderdale, Florida 33309 ("EHP"), and OneBOSS.io Inc., a Texas corporation with its principal place of business at 15911 Champion Dr, Spring, TX 77379 ("OneBOSS"). EHP and OneBOSS are each a "Party" and together the "Parties."

## BACKGROUND

A. OneBOSS provides EHP with the software-as-a-service applications marketed as "OneBOSS Census Connect" and "OneBOSS Proposal Engine", which extract payroll census data from employer payroll systems and generate proposals (together, the "OneBOSS Tool"), under the Master Software-as-a-Service Agreement, Agreement Reference MSA-20260507-02, and Order Form No. O-20260507-002, each dated as of May 7, 2026 (together, the "Prior Arrangement").

B. EHP has decided to stop implementation of the OneBOSS Tool and to transition the groups currently serviced through it off the tool.

C. The Parties wish to set out how OneBOSS will support the Existing Groups during a limited transition period, how EHP's data will be protected and returned, and what OneBOSS will be paid.

The Parties agree as follows:

## 1. DEFINITIONS

1.1 **"Affiliates"** means the brokers, consultants, agents, referral partners, and other distribution partners through which EHP markets or services its programs.

1.2 **"Cutover"** means, for an Existing Group, the date on which EHP notifies OneBOSS that the group has moved off the OneBOSS Tool.

1.3 **"EHP Contact"** means David Dziewit, or another person EHP designates in writing.

1.4 **"EHP Data"** means all data and materials relating to EHP, its clients, prospects, and Affiliates that OneBOSS holds or has accessed, in any form, including payroll census files (Social Security numbers, dates of birth, wages, addresses, and dependents), enrollment and election data, proposals and savings models, client contact records, credentials, MFA and CAPTCHA logs, session recordings, agent crawl logs, and email threads.

1.5 **"Existing Groups"** means the employer groups listed in Schedule A.

1.6 **"Transition Period"** means the period from the Effective Date until the earlier of (a) Cutover of the last Existing Group and (b) October 1, 2026, unless this Agreement is terminated earlier under Section 14.

## 2. IMPLEMENTATION WORK AND NEW CASES

2.1 **Stop Work.** As of the Effective Date, OneBOSS shall stop all implementation, development, integration, and build-out work for EHP. No further work is authorized, and no further work is billable, unless EHP approves it in writing in advance.

2.2 **Prior Timelines Withdrawn.** Every implementation deadline, milestone, or timeline previously communicated to OneBOSS by any person is withdrawn. None creates any obligation of EHP or any right to payment.

2.3 **No New Cases.** After the Effective Date, OneBOSS shall not add any EHP client, prospect, or group to the OneBOSS Tool or any other OneBOSS system. The Existing Groups are the only EHP cases OneBOSS may service.

2.4 **Inbound Inquiries.** If any EHP client, prospect, or Affiliate contacts OneBOSS about a matter outside the Existing Groups, OneBOSS shall forward the inquiry to the EHP Contact within one (1) business day and shall not respond on the substance.

**3. COMMUNICATIONS**

3.1 **No New Communication.** OneBOSS shall not initiate communication with any EHP client, prospect, Affiliate, or staff member, including any person OneBOSS met or dealt with through EHP, except as Sections 3.2 and 3.3 permit.

3.2 **Existing Groups.** OneBOSS may communicate with the Existing Groups, and with the Affiliates on those groups, only as needed to provide the support described in Section 4. OneBOSS shall copy the EHP Contact or EHP's payroll team on every written communication and shall invite one of them to every call or meeting.

3.3 **EHP Point of Contact.** OneBOSS shall direct all communication with EHP to the EHP Contact and shall not contact other EHP staff, developers, or contractors unless the EHP Contact approves.

3.4 **No Holding Out.** OneBOSS shall not represent itself as an affiliate, vendor, partner, approved platform, or communication hub of EHP. OneBOSS shall not use EHP's name, or associate the OneBOSS name with any EHP client, except as needed to operate the OneBOSS Tool for the Existing Groups.

3.5 **Transition Communications.** OneBOSS shall not disclose or discuss this Agreement, the transition, or any change in EHP's technology or service providers with any client, prospect, or Affiliate. EHP alone decides what is communicated on those subjects, when, and by whom.

3.6 **Events and Travel.** OneBOSS shall not attend any conference, meeting, or event on EHP's behalf, or travel to meet any EHP client, prospect, or Affiliate, without the EHP Contact's prior written approval.

**4. SUPPORT FOR EXISTING GROUPS AND AFFILIATES**

4.1 **Continuity.** During the Transition Period, OneBOSS shall keep the OneBOSS Tool operating without interruption for each Existing Group through enrollment, go-live, and Cutover.

4.2 **Eligibility Data.** For each Existing Group, OneBOSS shall deliver to EHP a file of active and terminated employees each month, and within one (1) business day after any request, in the format the Parties agree.

4.3 **Affiliate Support.** OneBOSS shall answer questions from Affiliates about the Existing Groups through the enrollment and transition process, subject to Section 3.2.

4.4 **Response Times.** OneBOSS shall respond to EHP support requests within one (1) business day. OneBOSS shall acknowledge any outage or login failure within four (4) business hours and shall work on it continuously until it is resolved.

4.5 **Cutover Cooperation.** When EHP gives notice of Cutover for an Existing Group, OneBOSS shall follow the revocation steps in Section 8 and shall not delay, obstruct, or discourage the move.

## 5. FEES

5.1 **Transition Fee.** EHP shall pay OneBOSS five dollars ($5.00) per employee per month (the "Transition Fee") for each Existing Group, calculated on the employees enrolled through EHP in that month and paid within thirty (30) days after the end of the month as paid. The Transition Fee continues after Cutover for as long as the group remains an active EHP client.

5.2 **Condition.** The Transition Fee is earned only while OneBOSS works cooperatively with EHP on the Existing Groups and complies with this Agreement. If OneBOSS breaches this Agreement, EHP may suspend payment on written notice. If OneBOSS does not cure the breach within five (5) business days after that notice, the Transition Fee ends and no further amount is owed.

5.3 **Final Payments Under the Prior Arrangement.** On signing, EHP shall pay OneBOSS US$40,000.00 for September 2026 and US$40,000.00 for October 2026 under the Prior Arrangement. Starting November, the Transaction Fee shall be effective. The Parties acknowledge that EHP has paid in full all fees for all periods through August 31, 2026. No flat, implementation, or other fee accrues under the Prior Arrangement after October 31, 2026.

5.4 **Existing Groups Only.** No fee is owed for any group other than the Existing Groups.

5.5 **No Other Compensation.** The amounts in this Section 5 are the only amounts EHP owes OneBOSS for any services, whether performed before or after the Effective Date.

## 6. DATA DURING THE TRANSITION PERIOD

6.1 **Minimizing Exposure.** Wherever possible, new census pulls and enrollment data for the Existing Groups shall be routed through EHP's platform. OneBOSS shall process only the EHP Data needed to service the Existing Groups.

6.2 **Delivery and Purge.** OneBOSS shall deliver each deliverable, including each census file and proposal, to EHP in the agreed format within forty-eight (48) hours after it is generated, and shall not retain it for more than seven (7) days after delivery.

6.3 **No New Subprocessors.** OneBOSS shall not allow any new subprocessor, tool, or artificial-intelligence vendor to access or process EHP Data without EHP's prior written approval.

6.4 **Security.** OneBOSS shall encrypt EHP Data at rest and in transit, require multi-factor authentication on all OneBOSS systems, limit access to the OneBOSS personnel named in Schedule B, and prohibit the use of personal devices and personal email for EHP Data.

6.5 **Incidents.** OneBOSS shall notify EHP within twenty-four (24) hours after discovering any actual or suspected unauthorized access to, or loss or disclosure of, EHP Data. OneBOSS shall cooperate fully with EHP's response and shall indemnify EHP for all losses arising from any breach caused by OneBOSS.

6.6 **Audit.** During the Transition Period and for twelve (12) months afterward, OneBOSS shall provide the evidence of compliance EHP requests, including access logs, screenshots, and written attestations.

## 7. DATA INVENTORY AND OWNERSHIP

7.1 **Inventory.** Within five (5) business days after the Effective Date, OneBOSS shall give EHP a written inventory of all EHP Data it holds. The inventory shall identify each data set and each place it is stored, including production databases, object storage, backups, logs, analytics tools, email, CRM systems, spreadsheets, personal devices, and every subprocessor.

7.2 **AI Providers.** The inventory shall name each third-party artificial-intelligence or large-language-model provider to which the OneBOSS Tool's crawler or proposal generator sent EHP Data, and shall state whether that provider retains the data or uses it for training.

7.3 **Ownership.** All EHP Data, EHP materials, proposals, and outputs belong to EHP or the applicable client. OneBOSS holds them only as a processor for the limited purposes of this Agreement and has no right to retain, aggregate, benchmark, or train on them, including in de-identified or derived form.

7.4 **HIPAA.** To the extent any EHP Data is protected health information under HIPAA, OneBOSS acts as a business associate of EHP and shall comply with the business associate agreement between the Parties. If none is in place on the Effective Date, OneBOSS shall sign EHP's form of business associate agreement within five (5) business days after the Effective Date.

**8. PAYROLL-SYSTEM ACCESS**

8.1 **Access List.** On the Effective Date, OneBOSS shall give EHP a complete list of every payroll-system login it holds or has held for any EHP client or prospect. For each login the list shall state the employer, the payroll vendor, the OneBOSS email address used, the creation date, the date of last access, and whether the login is still active.

8.2 **Crawl Freeze.** As of the Effective Date, OneBOSS shall stop all automated crawls of client payroll systems, except scheduled pulls for the Existing Groups that EHP has approved.

8.3 **Revocation.** At Cutover of each Existing Group, and for any other client or prospect whenever EHP directs, EHP (and not OneBOSS) will instruct the client to revoke OneBOSS's login. OneBOSS shall then confirm in writing that it can no longer access that client's payroll system.

8.4 **Credential Teardown.** After revocation, OneBOSS shall disable each OneBOSS-created email account used for that login and shall turn over to EHP or destroy all MFA seeds, recovery codes, session cookies, and stored credentials.

8.5 **Certification.** OneBOSS shall certify in writing that it retains no client payroll credential, session, or screen capture in any system, including agent logs.

8.6 **Access Method.** OneBOSS represents that its access to each payroll system complied with the payroll vendor's terms of service. OneBOSS shall indemnify EHP against any claim by a payroll vendor or client arising from that access.

**9. RETURN AND DESTRUCTION OF DATA**

9.1 **Return.** Before the end of the Transition Period, OneBOSS shall deliver to EHP a complete export of all EHP Data and work product in usable formats, including CSV or JSON and the original files.

9.2 **Destruction.** Within thirty (30) days after that delivery, OneBOSS shall destroy all copies of EHP Data, including copies in backups, logs, email, subprocessor systems, and personal devices. Copies in backups may be purged on the vendor's normal rotation, but no later than sixty (60) days after delivery, and shall be inaccessible until purged.

9.3 **Officer Certification.** Stephen Myers shall personally sign a certificate confirming the return and destruction and listing every system covered. If EHP has reason to doubt the certificate, EHP may have a third party verify it at OneBOSS's cost.

**10. INTELLECTUAL PROPERTY**

10.1 **Independent Development.** OneBOSS acknowledges that any technology, tool, or platform that EHP or its service providers use, develop, or acquire, now or in the future, is independent of the

OneBOSS Tool. OneBOSS has no ownership interest in, license to, or infringement or other claim against any of them, and shall not assert any such claim against EHP, its service providers, or their personnel.

10.2 **No OneBOSS Materials.** OneBOSS confirms that it has not provided any OneBOSS code, models, prompts, or templates to EHP or to anyone working on EHP's behalf. To the extent any were provided, OneBOSS grants EHP and its service providers a perpetual, irrevocable, royalty-free license to use them.

10.3 **EHP Materials.** EHP owns its plan design, savings methodology, pricing, proposal templates, and branding. OneBOSS shall not reuse any EHP-specific template, assumption, or pricing in its own product or for any other customer.

10.4 **Joint Work.** OneBOSS assigns to EHP all of its rights in materials developed jointly with EHP, including integration specifications and proposal formats.

**11. CONFIDENTIALITY**

11.1 OneBOSS shall keep confidential, and shall use only to perform this Agreement, all non-public information of EHP, including EHP Data, EHP pricing, Affiliate compensation structure, client lists, pipeline, and the terms of this Agreement.

**12. POST-PERIOD RESTRICTIONS**

12.1 **Non-Solicitation.** For twenty-four (24) months after the Transition Period ends, OneBOSS shall not solicit, directly or indirectly, the Existing Groups or any other EHP client or Affiliate.

12.2 **No Use of Confidential Information.** OneBOSS shall not use EHP confidential information to compete for any of those clients or Affiliates.

12.3 **Statements.** After the Transition Period, OneBOSS shall make no statement about EHP to any EHP client or Affiliate without EHP's prior written approval. The non-disparagement obligation in Section 13.3 continues after the Transition Period.

12.4 **Post-Period Cooperation.** For ninety (90) days after the Transition Period, OneBOSS shall provide reasonable assistance at no charge, including answering questions about historical census pulls.

**13. FUTURE RELATIONSHIP**

13.1 **Good Faith.** While the Parties work through this transition, neither Party shall take any action intended to harm, or reasonably likely to harm, the Existing Groups, the Affiliates, or the prospect of a future business relationship between the Parties.

13.2 **No Bar to Future Work.** Nothing in this Agreement prevents the Parties from working together in the future. Any future engagement requires a new written agreement signed by both Parties.

13.3 **Non-Disparagement.** Neither Party shall disparage the other, or the other's owners, staff, products, or services, to any client, prospect, Affiliate, or other third party.

**14. TERM, SURVIVAL, AND REMEDIES**

14.1 **Term.** This Agreement starts on the Effective Date and continues through the Transition Period.

14.2 **Survival.** Sections 5, 6.5, 6.6, 7.3, 8.5, 8.6, and 9 through 15 survive the end of the Transition Period. The confidentiality and data obligations in this Agreement survive indefinitely.

14.3 **Termination for Breach.** EHP may terminate this Agreement on written notice if OneBOSS materially breaches it and, where the breach can be cured, fails to cure it within five (5) business days after notice.

14.4 **Injunctive Relief.** OneBOSS agrees that a breach of Section 3, 6, 8, 9, 11, or 12 would cause EHP harm that money cannot fully remedy, and that EHP may seek injunctive relief in addition to any other remedy.

**15. GENERAL**

15.1 **Entire Agreement.** This Agreement is the entire agreement between the Parties on its subject. It replaces the Prior Arrangement and all earlier agreements, understandings, and communications on that subject, whether written or oral.

15.2 **Governing Law.** The laws of the State of Florida govern this Agreement. The state and federal courts located in Broward County, Florida have exclusive jurisdiction over any dispute under it.

15.3 **Amendment and Waiver.** This Agreement may be amended, and any right under it waived, only in a writing signed by both Parties.

15.4 **Assignment.** OneBOSS may not assign this Agreement or delegate its obligations without EHP's prior written consent.

15.5 **Notices.** Notices under this Agreement shall be in writing and sent by overnight courier to the addresses in the first paragraph of this Agreement and by email to the address below each Party's signature.

15.6 **Severability.** If a court finds any provision of this Agreement unenforceable, that provision shall be enforced to the extent permitted and the rest of this Agreement remains in effect.

15.7 **Counterparts.** This Agreement may be signed in counterparts and by electronic signature, each of which is an original.

The Parties have signed this Agreement as of the Effective Date.

| EHP Inc | OneBOSS.io Inc. |
| --- | --- |
| By: ______________________________ | By: ______________________________ |
| Name: ___________________________ | Name: Stephen Myers |
| Title: ____________________________ | Title: Founder and Chief Executive Officer |
| Date: ____________________________ | Date: ____________________________ |
| Notice email: ______________________ | Notice email: ______________________ |

## SCHEDULE A — EXISTING GROUPS

| Group | Effective date |
| --- | --- |
| **LEGAL NAME OF THE 10/1 GROUP** | October 1, 2026 |
| **LEGAL NAME OF THE 11/1 GROUP** | November 1, 2026 |

## SCHEDULE B — AUTHORIZED ONEBOSS PERSONNEL

*OneBOSS shall list below, before signing, each person who has access to EHP Data.*

| Name | Role |
| --- | --- |
| | |
| | |
| | |