10/9/2026 5:05 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 121022361
By: Adiliani Solis
Filed: 10/9/2026 5:05 PM

**Cause No.: ____________________**

| | | |
|---|---|---|
| **ONEBOSS.IO, INC.,** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **HARRIS COUNTY, TEXAS** |
| **EHP, INC., ESSENTIAL HEALTH PLAN INC., and EVERON TECHNOLOGIES, LLC,** | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| **Defendants.** | § | **_____ JUDICIAL DISTRICT** |

**Plaintiff OneBOSS.IO, Inc.'s Verified Original Petition and Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction**

Plaintiff OneBOSS.IO, Inc. files this Verified Original Petition and Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction complaining of Defendants EHP, Inc., Essential Health Plan, Inc., and Everon Technologies, LLC, asserting causes of action and seeking injunctive relief. In support, OneBOSS.IO, Inc. respectfully shows the Court the following:

## A. Discovery Control Plan

1. Plaintiff intends to conduct discovery under Level 3 of Tex. R. Civ. P. 190.4 and affirmatively pleads that this suit is not governed by the expedited actions process in Tex. R. Civ. P. 169.

## B. Claim for Relief

2. Plaintiff seeks monetary relief over $1,000,000 pursuant to Tex. R. Civ. P. 47(c)(4).

**C. Parties**

3. **Plaintiff OneBOSS.IO, Inc.** ("OneBOSS"), is a Texas Corporation with its principal place of business in Harris County, Texas.

4. **Defendant EHP, Inc.** ("EHP"), is a foreign corporation organized and existing under the laws of the State of Delaware, who maintains an agent for service of process in Delaware: Republic Registered Agent, LLC, 262 Chapman Rd., Suite 240, Newark, Delaware 19702. Defendant may be served with process by serving the Texas Secretary of State at 1019 Brazos Street, Austin, Texas 78701, as its agent for service because Defendant engages in business in Texas but has not designated or maintained a resident agent for service of process in Texas. *See* Tex. Civ. Prac. & Rem. Code §§ 17.044(a)(1), 17.045.

5. In the alternative, EHP may be served outside Texas under Tex. R. Civ. P. 108 and Tex. Bus. Orgs. Code § 5.201(b)(1) by any disinterested person competent to do so, through personal delivery to EHP's registered agent, Republic Registered Agent, LLC, 262 Chapman Rd., Suite 240, Newark, Delaware 19702.

6. **Defendant Essential Health Plan, Inc.** ("Essential Health"), is a foreign corporation organized and existing under the laws of the State of

Florida, who maintains an agent for service of process in Florida: Ryszard Bolko, Law Offices of Ryszard Bolko, PLLC, 2933 W Cypress Creek Rd., Suite 202, Fort Lauderdale, Florida 33309. Defendant may be served with process by serving the Texas Secretary of State at 1019 Brazos Street, Austin, Texas 78701, as its agent for service because Defendant engages in business in Texas but has not designated or maintained a resident agent for service of process in Texas. *See* Tex. Civ. Prac. & Rem. Code §§ 17.044(a)(1), 17.045.

7. In the alternative, Essential Health may be served outside Texas under Tex. R. Civ. P. 108 and Tex. Bus. Orgs. Code § 5.201(b)(1) by any disinterested person competent to do so, through personal delivery to Essential Health's registered agent, Ryszard Bolko, at Law Offices of Ryszard Bolko, PLLC, 2933 W Cypress Creek Rd., Suite 202, Fort Lauderdale, Florida 33309.

8. On information and belief, EHP and Essential Health are alter egos operating as a single entity, such that each is responsible for the other's acts and obligations. EHP, the Delaware corporation that is party to the NDA and the MSA, is not registered to transact business in Florida, yet it operates from the same Fort Lauderdale office — 2933 W. Cypress Creek Road, Suite 202 — as Essential Health, the Florida corporation that is registered there. Both entities are controlled by and affiliated with Ryszard Bolko who serves as chief financial officer for EHP and registered agent and president of Essential Health.

9. On information and belief, the two entities share common ownership, management, offices, personnel, and finances; do not observe a genuine separation of assets or operations between them; and are used interchangeably by Mr. Bolko to conduct a single business. On information and belief, Defendants caused EHP to be used — including by contracting in the name of an entity not registered to do business in Florida while conducting the business, holding the assets, or housing the operations in the affiliated registered entity — to perpetrate an actual fraud on OneBOSS primarily for Defendants' direct personal benefit, namely to obtain the benefits of OneBOSS's Solutions and Confidential Information while evading EHP's obligations under the NDA and the MSA and shielding assets from OneBOSS's claims. Recognizing the corporate fiction as a separation between EHP and Essential Health under these circumstances would work an injustice on OneBOSS. Essential Health is therefore liable, jointly and severally with EHP, for the obligations and conduct alleged in this Petition. In the alternative, and to the extent Essential Health itself performs, directs, or participates in the reverse engineering of the Solutions alleged below, Essential Health is directly liable for misappropriation of OneBOSS's trade secrets under the Texas Uniform Trade Secrets Act.

10. **Defendant Everon Technologies, LLC** ("Everon"), is a foreign limited liability corporation organized and existing under the laws of the State

of Florida, who maintains an agent for service of process in Florida: Juan Sastoque, 7895 Grand Canal Dr., Miami, Florida 33144. Defendant may be served with process by serving the Texas Secretary of State at 1019 Brazos Street, Austin, Texas 78701, as its agent for service because Defendant engages in business in Texas but has not designated or maintained a resident agent for service of process in Texas. *See* Tex. Civ. Prac. & Rem. Code §§ 17.044(a)(1), 17.045.

11. In the alternative, Everon may be served outside Texas under Tex. R. Civ. P. 108 and Tex. Bus. Orgs. Code § 5.201(b)(1) by any disinterested person competent to do so, through personal delivery to Everon's registered agent, Juan Sastoque, 7895 Grand Canal Dr., Miami, Florida 33144.

12. Defendant Everon is the software-development company for EHP and Essential Health and operates under common ownership and control with them as part of the X Benefit Group family of companies. EHP's and Essential Health's owners control Everon's funding and direct its work; Everon invoices the parent entity, and its development personnel take their direction from EHP's and Essential Health's owners. Everon's founding partner and head of development has described Everon as managing software releases across the X Benefit Group technology stacks and as having taken over systems administration and workspace operations for EHP. At all relevant times, Everon acted as the agent of, and at the direction of, EHP and Essential Health

in the conduct alleged in this Petition, including the reverse engineering of the Solutions. Everon is therefore jointly and severally liable with EHP and Essential Health for that conduct and is directly liable for misappropriation of OneBOSS's trade secrets under the Texas Uniform Trade Secrets Act.

13. In addition, in the November 2025 SaaS Agreement described below, EHP expressly agreed that its Affiliates — including any software companies under common ownership or control — and its contractors would not reverse engineer OneBOSS's technology or assist in building any product that competes with, replicates, or is derived from the OneBOSS Platform; Everon falls squarely within that class.

## D. Jurisdiction

14. The relief sought is within the Court's jurisdictional limits. This Court has subject matter jurisdiction over this case under Texas Government Code §§ 24.007 and 24.008 because the amount in controversy exceeds the Court's minimum jurisdictional threshold, and the Court is authorized to grant the requested injunctive relief under Texas Civil Practice and Remedies Code § 65.021.

15. This Court has personal jurisdiction over Defendant EHP under the Texas long-arm statute, Tex. Civ. Prac. & Rem. Code § 17.042, and consistent with due process. EHP is subject to specific personal jurisdiction because OneBOSS's claims arise from and relate to EHP's purposeful contacts

with Texas, including that EHP (a) contracted with OneBOSS, a Texas company, under the NDA, the SaaS and the MSA; (b) accessed and used OneBOSS's Texas-based, hosted software Solutions; and (c) agreed in the NDA, the SaaS, and the MSA that those agreements are governed by Texas law and that venue lies exclusively in Harris County, Texas, thereby consenting to suit in Harris County.

16. This Court has personal jurisdiction over Defendant Essential Health under the Texas long-arm statute, Texas Civil Practice and Remedies Code § 17.042, and consistent with due process. Essential Health is subject to specific personal jurisdiction because OneBOSS's claims arise from and relate to Essential Health's purposeful contacts with Texas, including that Essential Health accessed and used OneBOSS's Texas-based, hosted software Solutions; and is working in conjunction with EHP that agreed in the NDA, the SaaS, and the MSA that Texas law governs and that venue lies exclusively in Harris County, Texas, thereby consenting to suit in Harris County.

17. This Court has personal jurisdiction over Defendant Everon under the Texas long-arm statute, Texas Civil Practice and Remedies Code § 17.042, and consistent with due process. Everon is subject to specific personal jurisdiction because OneBOSS's claims arise from and relate to Everon's purposeful contacts with Texas, including that Everon accessed and used OneBOSS's Texas-based, hosted software Solutions; and is working in

conjunction with EHP that agreed in the NDA, the SaaS, and the MSA that Texas law governs and that venue lies exclusively in Harris County, Texas, thereby consenting to suit in Harris County.

**E. Venue**

18. Venue is proper in Harris County, Texas under Tex. Civ. Prac. & Rem. Code § 15.002(a)(1) because all or a substantial part of the events or omissions giving rise to OneBOSS's claims occurred in Harris County, including OneBOSS's performance under the NDA, the SaaS, and the MSA and its operation of the hosted Solutions from its principal place of business in Harris County. Venue is also proper in Harris County because EHP agreed, in the NDA, the SaaS, and the MSA, that venue for disputes arising under those agreements lies exclusively in Harris County, Texas.

**F. Facts**

19. OneBOSS is a Texas software company that develops, hosts, and licenses two proprietary software-as-a-service products: "Census Connect," which automates the extraction of payroll data from third-party payroll systems and generates census files, and "Proposal Engine," which calculates employee health-benefit proposals (together, the "Solutions"). OneBOSS hosts the Solutions in a logically segregated, multi-tenant environment and does not deliver or disclose the Solutions' source code to its customers.

20. The source code, algorithms, models, designs, and know-how underlying the Solutions are proprietary to OneBOSS, derive independent economic value from not being generally known or readily ascertainable by proper means, and constitute trade secrets. OneBOSS takes reasonable measures to keep this information secret, including restricting access through written confidentiality and license agreements, operating a logically segregated multi-tenant environment, and never delivering its source code.

21. EHP is an employer-focused health engagement platform designed to support proactive medicine through personalized Plans of Care, AI-driven engagement, and virtual healthcare access. The company partners with employers nationwide to improve employee health engagement while supporting sustainable benefits strategies. EHP utilizes OneBOSS' software to handle enrollment and payroll implementation and to create a personalized health roadmap for each employee based on their health profile, lifestyle factors, and potential risk indicators.

## I. Non-Disclosure and Confidentiality Agreement.

22. OneBOSS and EHP entered into a Non-Disclosure and Confidentiality Agreement effective September 23, 2025 (the "NDA"),[1] signed by Stephen Myers for OneBOSS and by Slava Zatuchny for EHP. The NDA's

[1] Attached as Exhibit 1.

stated Purpose is the integration and validation of OneBOSS's Census Connect solution with EHP's systems and client accounts.

23. Section 3 of the NDA prohibits EHP from copying, reproducing, reverse engineering, or otherwise using OneBOSS's Confidential Information except as necessary for the Purpose. The NDA defines Confidential Information broadly to include OneBOSS's software, designs, processes, documentation, and know-how, reserves all OneBOSS intellectual property as OneBOSS's sole property, and provides that unauthorized use may cause irreparable harm entitling OneBOSS to injunctive relief in addition to its other remedies.

**II. November 15, 2025 SaaS Agreement.**

24. OneBOSS and EHP are also parties to a OneBOSS SaaS Agreement executed as of November 15, 2025 ("SaaS").[2] It is governed by Texas law, and the parties agreed that the courts located in Harris County, Texas have exclusive jurisdiction and venue.

25. The November 2025 SaaS Agreement expressly protects OneBOSS's intellectual property and prohibits reverse engineering, and its restrictions extend by their terms to EHP's affiliates and contractors. In Section 8A, EHP and its "Affiliates (including any software companies under

[2] Attached as Exhibit 2.

common ownership or control) and contractors" agreed that they shall not "(a) reverse engineer, decompile, disassemble, or otherwise attempt to derive the source code, architecture, structure, or underlying ideas of the Services or OneBOSS IP; (b) create, develop, or assist any third party to create or develop any product or service that competes with, replicates, or is derived from the OneBOSS Platform"; or "(c) use outputs, interfaces, or metadata from the Services to build or train a competing platform, application, or AI system." The Agreement defines "Affiliate" to include any entity under common control and any "successor, parent, subsidiary, or acquired entity." Section 8A further provides that unauthorized use or disclosure "will cause irreparable harm" and that "OneBOSS may seek injunctive relief without bond."

26. In Section 4.6, EHP agreed that OneBOSS "shall serve as the exclusive payroll integration platform for all payroll providers used within the EHP ecosystem for which integration is technically feasible and commercially reasonable," and that, except in a narrow interim circumstance, "EHP shall not use or authorize third-party payroll integrators for providers supported or integrated by OneBOSS." Section 4.6 provides that a material breach "entitles OneBOSS to seek injunctive relief."

**III. Master Software-as-a-Service Agreement.**

27. OneBOSS and EHP are also parties to a Master Software-as-a-Service Agreement and accompanying Order Form, each effective May 7, 2026

(together, the "MSA"),[3] under which EHP subscribed to both Solutions for a fixed initial term of twelve months running into May 2027.

28. Section 2.2(a) of the MSA prohibits EHP, and any third party acting through it, from reverse engineering, decompiling, disassembling, or otherwise attempting to derive the source code, models, or algorithms of the Solutions. Section 2.2(d) further prohibits EHP from using the Solutions to build a competitive product or service. The MSA reserves to OneBOSS all right, title, and interest in the Solutions, including all trade secrets.

29. The MSA treats a breach of Section 2.2 as among its most serious as such breaches are carved out of the MSA's damages exclusion and liability cap, and Section 16.4 provides that such a breach may cause irreparable harm and entitles OneBOSS to seek injunctive relief.

30. The MSA requires EHP to pay a minimum monthly commitment regardless of utilization — $25,000 per month for Census Connect and $15,000 per month for Proposal Engine, totaling approximately $40,000 per month. The MSA contains no right of termination for convenience; EHP may exit only by a sixty-day notice of non-renewal at the end of the term or by termination for cause based on OneBOSS's material, uncured breach. EHP manifested its

[3] Attached as Exhibit 3.

assent to the MSA by performing under it, including by paying the agreed fees through August 31, 2026.

**IV. EHP's Repudiation of the MSA.**

31. EHP has announced that it "decided to stop" using the Solutions and tendered a proposed "Transition and Separation Agreement," which OneBOSS affirmatively rejects. Through that proposal, EHP declared that no fee would accrue under the MSA after October 31, 2026, and that, beginning in November 2026, it would pay only $5.00 per employee per month in place of the bargained-for minimum of approximately $40,000 per month. EHP's proposal would also shift governing law and venue from Texas and Harris County to Florida.

32. EHP's announced cessation of performance and its unilateral substitution of a nominal fee for the bargained-for minimum, months before the end of the term, are a positive and unconditional refusal to fulfil EHP's remaining obligations under the MSA. OneBOSS has fully performed and remains ready, willing, and able to perform through the end of the term.

33. On October 2, 2026, OneBOSS, through counsel, gave EHP written notice of breach and anticipatory repudiation, demanded written assurances by October 16, 2026, that OneBOSS's confidential information was not being used to build or acquire a competing product, imposed a litigation-hold and

preservation demand, and invoked OneBOSS's audit right under Section 5.7 of the MSA.

## V. EHP's Reverse Engineering of OneBOSS' software programs.

34. Beginning in May 2026 and continuing to the filing of this petition, OneBOSS disclosed to EHP, Essential Health, and Everon — under the NDA and the MSA, and solely for the limited purpose of integrating and validating the Solutions — the confidential design, architecture, methods, and know-how underlying the Solutions, including the following:

> (a) At an initial meeting on May 4, 2026, OneBOSS demonstrated to EHP's owners how the Solutions connect to a client's payroll system and automate the extraction and writing of payroll data (including the handling of multi-factor authentication prompts and CAPTCHAs), how OneBOSS's automated agents adapt to new payroll systems, how the Solutions build a census from payroll reports, and how OneBOSS's tax engine derives each state's rules and cross-checks them against a third-party calculator. EHP issued the MSA three days later.
>
> (b) At EHP's direction, Everon was assigned to integrate the Solutions into EHP's affiliate and employer portals. From May through September 2026, OneBOSS conducted numerous working sessions with EHP, Essential Health, and Everon personnel, walking them through the entire process, including census extraction, proposal generation, the pushing of deduction codes into payroll, the monthly change cycle, the audit, and the embed and API design.
>
> (c) OneBOSS provided EHP, Essential Health, and Everon with its confidential design documents — including the end-to-end lifecycle, process-flow diagrams, whiteboard materials, the implementation schedule, the embed design document, and the browser-capability specification — and later delivered the

complete user guides for the stand-alone product. OneBOSS also provisioned administrator and operator accounts for EHP and Everon personnel.

(d) Throughout this period, Everon repeatedly expressed its intention to obtain OneBOSS's output and functionality as raw data and to replicate the Solutions within EHP's own architecture — stating, among other things, that it wanted the census and proposal as raw data rather than finished documents, that the census function must exist on its own internally within EHP, and that Everon could revert to direct payroll APIs and build the user interface itself.

(e) In mid-September 2026, EHP sent personnel from Florida to Everon's offices in Pennsylvania to provide Everon with details of the proposal tool that OneBOSS had created, for the purpose of building a competing substitute for the Solutions. EHP has since begun displaying a simplified proposal tool on its own website.

(f) On September 29, 2026, EHP's Chief Operating Officer told OneBOSS's chief executive that EHP's leadership had directed him to hold off on the work and that EHP did not want OneBOSS communicating directly with EHP's clients. When OneBOSS's chief executive stated that it appeared EHP was attempting to violate the NDA and to reverse engineer or otherwise recreate the Solutions, EHP's Chief Operating Officer did not deny it.

(g) On September 18, 2026, EHP reset the password on the account through which OneBOSS and EHP had worked, without notice to OneBOSS; on September 23, 2026, EHP's counsel directed that OneBOSS's confidential security and compliance documentation be sent to Everon and a third party; and on September 30, 2026, EHP directed OneBOSS to stop all implementation work. No Defendant has answered OneBOSS's October 2, 2026 demand, and no Defendant has denied that it is reverse engineering or recreating the Solutions.

(h) The conduct described above also violates the November 2025 SaaS Agreement, in which EHP and its affiliated software companies under common ownership or control and its contractors expressly agreed not to use the outputs, interfaces, or metadata of

> the Services to build or train a competing platform, application, or AI system, or to assist any third party in creating a product that competes with, replicates, or is derived from the OneBOSS Platform.

35. EHP's reverse engineering of the Solutions breaches EHP's express obligations under the NDA, the SaaS, and the MSA and threatens the misappropriation of OneBOSS's trade secrets. Unless EHP is immediately restrained and enjoined, EHP will continue reverse engineering the Solutions, and OneBOSS will suffer immediate and irreparable injury for which there is no adequate remedy at law.

## G. Conditions Precedent

36. All conditions precedent to OneBOSS bringing this action and to OneBOSS's request for relief have been performed or have occurred.

## H. Causes of Action

### Count I – Breach of the Non-Disclosure and Confidentiality Agreement.

37. Pursuant to Tex. R. Civ. P. 58, OneBOSS re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

38. The NDA is a valid, enforceable contract, signed by both OneBOSS and EHP. OneBOSS performed its obligations under the NDA.

39. EHP breached the NDA. Section 3 of the NDA prohibits EHP from reverse engineering OneBOSS's Confidential Information except as necessary

for the limited integration-and-validation Purpose. EHP's reverse engineering of the Solutions falls outside that Purpose and breaches Section 3 and EHP's obligation to use OneBOSS's Confidential Information and reserved intellectual property only as the NDA permits.

40. EHP's breach of the NDA has directly and proximately caused OneBOSS damages within the jurisdictional limits of the Court, and, as alleged above, threatens OneBOSS with irreparable injury for which there is no adequate remedy at law.

**Count II – Breach of the November 2025 SaaS Agreement**

41. Pursuant to Tex. R. Civ. P. 58, OneBOSS re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

42. The November 2025 SaaS Agreement is a valid, enforceable contract, signed by both OneBOSS and EHP. OneBOSS fulfilled its obligations under it. EHP breached the November 2025 SaaS Agreement. Sections 2.2 and 8A prohibit EHP, and its affiliates (including any software companies under common ownership or control) and contractors, from reverse engineering the Services or OneBOSS IP, from assisting any third party to create a product that competes with, replicates, or is derived from the OneBOSS Platform, and from using the outputs, interfaces, or metadata of the Services to build or train a competing platform, application, or AI system. EHP, acting directly and

through its affiliate Everon, engaged in that conduct. EHP separately breached Section 4.6 by using or authorizing a third-party payroll integrator for providers OneBOSS supports, in violation of OneBOSS's contracted-for exclusivity.

43. EHP's breaches of the November 2025 SaaS Agreement have directly and proximately caused OneBOSS damages within the jurisdictional limits of the Court and threaten OneBOSS with irreparable injury for which there is no adequate remedy at law.

**Count III – Breach of the Master Software-as-a-Service Agreement.**

44. Pursuant to Tex. R. Civ. P. 58, OneBOSS re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

45. The MSA is a valid, enforceable contract. EHP manifested its assent to the MSA through its performance, including its subscription to and use of the Solutions and its payment of the agreed fees through August 31, 2026. OneBOSS performed its obligations under the MSA.

46. EHP breached the MSA. EHP's reverse engineering of the Solutions breaches Section 2.2(a), which prohibits reverse engineering, decompiling, disassembling, or deriving the source code, models, or algorithms of the Solutions, and, to the extent EHP is using the Solutions to develop a

competing product, also breaches Section 2.2(d). EHP has separately breached the MSA by refusing to pay the minimum monthly fees the MSA requires.

47. EHP's breaches of the MSA have directly and proximately caused OneBOSS damages within the jurisdictional limits of the Court, and EHP's reverse engineering threatens OneBOSS with irreparable injury for which there is no adequate remedy at law.

**Count IV – Anticipatory Repudiation of the Master Software-as-a-Service Agreement.**

48. Pursuant to Tex. R. Civ. P. 58, OneBOSS re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

49. By announcing that it has "decided to stop" using the Solutions, declaring that no fee would accrue under the MSA after October 31, 2026, and stating that it would pay only $5.00 per employee per month in place of the approximately $40,000 monthly minimum beginning in November 2026, EHP made a positive and unconditional refusal to perform its remaining obligations under the MSA, without just excuse, before performance was due. This conduct is an anticipatory repudiation of the MSA.

50. OneBOSS accepts EHP's repudiation and treats the MSA as presently and totally breached. OneBOSS is entitled to recover the present value of the fees it would have earned over the remainder of the term — on the

order of $240,000 to $280,000 before interest, costs, attorneys' fees, and any additional per-client amounts — subject to any mitigation credit EHP proves.

**Count V – Misappropriation of Trade Secrets Under TUTSA**

51. Pursuant to Tex. R. Civ. P. 58, OneBOSS re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

52. OneBOSS owns trade secrets, including the source code, algorithms, models, designs, and know-how underlying the Solutions. That information derives independent economic value from not being generally known to, or readily ascertainable by proper means by, others who could profit from its use, and OneBOSS has taken reasonable measures under the circumstances to keep it secret, as alleged above.

53. Under the Texas Uniform Trade Secrets Act, Texas Civil Practice and Remedies Code Chapter 134A, reverse engineering is a "proper means" of acquisition only when it is not otherwise prohibited. Because the NDA, the SaaS, and the MSA expressly prohibit EHP from reverse engineering the Solutions and limit EHP's use of OneBOSS's information, EHP's reverse engineering is not a proper means. It is instead acquisition and use by improper means, which the Act defines to include breach or inducement of a breach of a duty to maintain secrecy, to limit use, or to prohibit discovery of a trade secret.

54. EHP has misappropriated, and threatens to continue misappropriating, OneBOSS's trade secrets under Chapter 134A. OneBOSS is entitled to injunctive relief against EHP's actual and threatened misappropriation under Tex. Civ. Prac. & Rem. Code § 134A.003, to recover its actual losses and EHP's unjust enrichment, and, because EHP's misappropriation is willful and malicious, to exemplary damages and reasonable attorneys' fees under Sections 134A.004 and 134A.005.

## I. Damages

55. Pursuant to Tex. R. Civ. P. 58, OneBOSS re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

56. As a direct and proximate result of EHP's breaches of the NDA and the MSA and its anticipatory repudiation of the MSA, OneBOSS has suffered actual damages, including the loss of the benefit of its bargain under the MSA, in an amount within the jurisdictional limits of the Court.

57. As a result of EHP's misappropriation of OneBOSS's trade secrets, OneBOSS is entitled to recover its actual losses and EHP's unjust enrichment caused by the misappropriation, or, in the alternative, a reasonable royalty, under Tex. Civ. Prac. & Rem. Code § 134A.004.

58. EHP's misappropriation of OneBOSS's trade secrets is willful and malicious. OneBOSS is therefore entitled to exemplary damages under Tex. Civ. Prac. & Rem. Code § 134A.004.

**J. Attorneys' Fees**

59. Pursuant to Tex. R. Civ. P. 58, OneBOSS re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

60. It was necessary for OneBOSS to secure the services of an attorney to prepare and prosecute this suit. Judgment for attorneys' fees through final judgment after appeal should be granted against EHP, Essential Health, and/or Everon and in favor of OneBOSS for the use and benefit of OneBOSS's counsel. In the alternative, OneBOSS requests that reasonable attorneys' fees through final judgment after appeal be taxed as costs to be ordered paid directly to OneBOSS's attorney, who may enforce the order in the attorney's own name.

61. OneBOSS is entitled to recover reasonable and necessary attorneys' fees under Texas Civil Practice and Remedies Code Chapter 38 and under the provisions of the parties' agreements for its breach-of-contract claims, and under Tex. Civ. Prac. & Rem. Code § 134A.005 for EHP's willful and malicious misappropriation of its trade secrets. OneBOSS, through

counsel, presented its claims to EHP on October 2, 2026, and EHP did not tender the amount owed within 30 days after the claim was presented.

## K. Application for Temporary Restraining Order, Temporary Injunction and Permanent Injunction

62. OneBOSS requests that the Court issue a temporary restraining order (TRO) and a temporary injunction against the Defendants to prevent imminent and irreparable harm to OneBOSS. OneBOSS further requests that, upon final hearing, the Court award a permanent injunction against EHP, Essential Health, and Everon. In support of this application for a TRO, temporary injunction, and permanent injunction (collectively, "injunctive relief"), OneBOSS respectfully shows the Court as follows:

### I. Grounds for Injunctive Relief

63. Pursuant to Tex. R. Civ. P. 58, OneBOSS re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein. The Declaration of Stephen Myers in support of this application for injunctive relief is attached and also incorporated herein by reference.[4]

64. Unless the Defendants are immediately enjoined and restrained, EHP, Essential Health, and Everon will continue to reverse engineer, decompile, disassemble, or otherwise attempt to derive the source code,

[4] Attached as Exhibit 4.

models, or algorithms of the Solutions, to use OneBOSS's Confidential Information and trade secrets to do so, and to use that information to develop a product that competes with the Solutions. EHP's intent to engage in these acts is evidenced by its ongoing reverse engineering of the Solutions through an affiliated company and its failure to provide the written assurances OneBOSS demanded. OneBOSS requests that the Court temporarily enjoin the Defendants from these acts until the trial of this cause and that, after final hearing, the Court permanently enjoin EHP, Essential Health, and Everon from the same acts.

65. Temporary injunctive relief is authorized under Tex. Civ. Prac. & Rem. Code § 65.011 to "preserve the status quo of the litigation's subject matter pending a trial on the merits." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). To obtain temporary injunctive relief, an applicant must plead and prove (1) a valid cause of action and request some form of permanent relief, (2) a probable right to the relief sought, (3) a probable injury that is imminent and irreparable if relief is not granted in the interim. *Id.*

66. Unless the Court grants injunctive relief, OneBOSS will suffer probable, imminent, and irreparable injury for which there is no adequate remedy at law. The integration automation and workflows that EHP, Essential Health, and Everon are reverse engineering are the core of OneBOSS's business; they are the subject of a pending provisional patent application and

are maintained in confidence under the NDA and the MSA. Once Everon rebuilds the Solutions from OneBOSS's confidential designs and the information OneBOSS disclosed, the secrecy of OneBOSS's trade secrets will be irretrievably lost, and OneBOSS will lose its largest customer — harms that cannot be measured or remedied by money damages. The threat is immediate and ongoing: EHP and Everon are actively developing a substitute for the Solutions, EHP has already begun displaying a competing proposal tool, and EHP continues to access and rely on the Solutions while refusing to pay. The risk of irreparable loss is heightened because EHP is transitioning to a new internet domain and a newly formed entity, such that any eventual money judgment may be uncollectible. A temporary restraining order and temporary injunction are necessary to preserve the status quo and to prevent the irreversible destruction of OneBOSS's trade secrets before the application for temporary injunction can be heard.

67. Injunctive relief is further authorized by the Texas Uniform Trade Secrets Act, Tex. Civ. Prac. & Rem. Code 134A.003, under which OneBOSS seeks relief against EHP and which permits a court to enjoin actual or threatened misappropriation of trade secrets.

68. Injunctive relief is further authorized by the November 2025 SaaS Agreement, in which EHP agreed that unauthorized use or disclosure of OneBOSS's intellectual property would cause irreparable harm and that

OneBOSS may seek injunctive relief without bond, and in which EHP agreed that a material breach of the exclusivity covenant in Section 4.6 entitles OneBOSS to seek injunctive relief.

**II. Temporary Injunction**

69. Pursuant to Tex. R. Civ. P. 58, OneBOSS re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein. The Declaration of Stephen Myers in support of this application for injunctive relief is attached and also incorporated herein by reference.

70. As set forth more fully above, OneBOSS seeks recovery from EHP for breach of the NDA, breach of the MSA, anticipatory repudiation of the MSA, and misappropriation of trade secrets under the Texas Uniform Trade Secrets Act.

71. OneBOSS has a probable right to the relief sought and is likely to succeed on the merits because the NDA and the MSA expressly prohibit EHP from reverse engineering the Solutions, and EHP's reverse engineering both breaches those agreements and constitutes misappropriation of OneBOSS's trade secrets by improper means under the Texas Uniform Trade Secrets Act.

72. Unless this Court grants OneBOSS's application and temporarily restrains EHP, Essential Health, and Everon from the acts described above, OneBOSS will suffer probable, imminent, and irreparable injury for which

there is no adequate remedy at law to give OneBOSS complete, final, and equitable relief. More specifically:

> (a) The harm to OneBOSS is imminent and probable because EHP is presently reverse engineering the Solutions and, absent an injunction, will continue to do so and to derive OneBOSS's source code, models, algorithms, and other trade secrets.
>
> (b) OneBOSS will suffer irreparable injury because the loss of its trade secrets cannot be undone and cannot be measured by any certain pecuniary standard; once EHP derives the Solutions' source code, models, and algorithms, their secrecy and value are destroyed, and the resulting loss of competitive advantage and goodwill cannot be adequately compensated in damages.
>
> (c) There is no adequate remedy at law that will give OneBOSS complete, final, and equitable relief because money damages cannot restore the secrecy of a trade secret once it is lost or fully compensate OneBOSS for the resulting harm.

73. The comparative injury and balance of equities and hardships to the parties and to the public interest support granting temporary injunctive relief, because an injunction would require the Defendants only to comply with the existing contractual and statutory obligations not to reverse engineer the Solutions, while denying relief would permit the irreversible loss of OneBOSS's trade secrets.

74. The requested temporary injunction will maintain the status quo — the last actual, peaceable, non-contested status that preceded the Defendants' reverse engineering of the Solutions — between the grant of the temporary injunction and trial.

### III. Temporary Restraining Order

75. Pursuant to Tex. R. Civ. P. 58, OneBOSS re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein. The Declaration of Stephen Myers in support of this application for injunctive relief is attached and also incorporated herein by reference.

76. OneBOSS further requests that the Court issue a TRO immediately enjoining EHP, Essential Health, and Everon from the acts described above to protect OneBOSS from the irreparable harm described above and to maintain the status quo in the interim before the application for temporary injunction may be heard. As shown by the verified facts and the attached Declaration of Stephen Myers, OneBOSS has satisfied all requirements for a TRO. OneBOSS will provide notice of this application to Ryszard Bolko, Law Offices of Ryszard Bolko, PLLC, 2933 W Cypress Creek Rd., Suite 202, Fort Lauderdale, Florida 33309; richard@bolkolaw.com.

### IV. Permanent Injunction

77. Pursuant to Tex. R. Civ. P. 58, OneBOSS re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein. The Declaration of Stephen Myers in support of this application for injunctive relief is attached and incorporated herein by reference.

78. OneBOSS requests that, upon final hearing, the Court issue a permanent injunction restraining the Defendants, and their officers, agents,

servants, employees, and all persons in active concert or participation with EHP who receive actual notice of the order, from directly or indirectly: (a) reverse engineering, decompiling, disassembling, or otherwise attempting to derive the source code, models, or algorithms of the Solutions; (b) using OneBOSS's Confidential Information or trade secrets to reverse engineer the Solutions or to develop any product or service that competes with the Solutions; and (c) disclosing OneBOSS's Confidential Information or trade secrets to any third party or affiliate.

79. Unless this Court grants OneBOSS's application and permanently restrains EHP, Essential Health, and Everon from the wrongful acts described above, OneBOSS will suffer imminent harm and irreparable injury for which OneBOSS will have no adequate remedy at law. More specifically:

> (a) The harm to OneBOSS after the conclusion of trial is imminent because EHP has engaged in a continuing course of reverse engineering the Solutions and will continue to misappropriate OneBOSS's trade secrets absent a permanent injunction.
>
> (b) OneBOSS will suffer irreparable injury because the loss of its trade secrets cannot be undone and cannot be measured by any certain pecuniary standard.
>
> (c) There is no adequate remedy at law that is as complete, practical, and efficient to the prompt administration of justice as the requested equitable injunctive relief to redress the harm OneBOSS will suffer after trial as a result of EHP's wrongful acts, because money damages cannot restore the secrecy of a trade secret once it is lost.

80. The comparative injury and balance of equities and hardships to the parties and to the public interest support granting permanent injunctive relief, because the injunction would require the Defendants only to honor their existing obligations not to reverse engineer the Solutions or misappropriate OneBOSS's trade secrets.

**V. Request for Hearing**

81. OneBOSS requests that the Court set this application for a TRO and temporary injunction for hearing, and after hearing the application, issue a TRO and temporary injunction against EHP, Essential Health, and Everon enjoining them from the acts described above. OneBOSS further requests that the Court set this matter for trial and, upon final hearing, permanently enjoin EHP, Essential Health, and Everon from the described acts.

**VI. Bond**

82. Section 8A of the November 2025 SaaS Agreement provides that OneBOSS may seek injunctive relief without bond. However, OneBOSS is willing and able to post a bond in a reasonable amount to be set by this Court.

## L. Prayer

WHEREFORE, PREMISES CONSIDERED OneBOSS.IO, Inc. respectfully requests that EHP, Inc., Essential Health Plan, Inc., and Everon Technologies, LLC be cited to appear and answer herein, and that the Court:

83. Hear this application for a TRO and, after the hearing, issue a TRO enjoining the Defendants, and their officers, agents, servants, and employees, and all persons in active concert or participation with EHP who receive actual notice of the order, from the date of the TRO and for 14 days thereafter from directly or indirectly: (i) reverse engineering, decompiling, disassembling, or otherwise attempting to derive the source code, models, or algorithms of the Solutions; (ii) using OneBOSS's Confidential Information or trade secrets to reverse engineer the Solutions or to develop any product or service that competes with the Solutions; and (iii) disclosing OneBOSS's Confidential Information or trade secrets to any third party or affiliate.

84. Set a hearing on this application for a temporary injunction and, after the hearing, issue a temporary injunction enjoining the Defendants, and their officers, agents, servants, and employees, and all persons in active concert or participation with EHP who receive actual notice of the order, during the pendency of this action from directly or indirectly engaging in the acts described in the preceding paragraph.

85. Order that OneBOSS recover from the Defendants the reasonable costs and expenses OneBOSS incurred in obtaining the TRO and temporary injunction.

86. Set a trial date and, upon final hearing, enter a permanent injunction that enjoins the Defendants, and their officers, agents, servants,

and employees, and all persons in active concert or participation with EHP who receive actual notice of the order, from performing the acts described above, and order that OneBOSS have judgment against the Defendants for:

(a) actual damages as requested herein, in an amount to be determined at trial;

(b) OneBOSS's recovery of the Defendants' unjust enrichment, or a reasonable royalty, under the Texas Uniform Trade Secrets Act, as requested herein;

(c) exemplary damages as requested herein;

(d) attorneys' fees as requested herein;

(e) prejudgment interest from the date of injury through the date of judgment, at the maximum rate allowed by law;

(f) post-judgment interest at the maximum legal rate;

(g) costs of court; and

(h) such other and further relief to which OneBOSS may be entitled in law or equity.

Respectfully submitted,

*<u>/s/ William Hagans</u>*
William Hagans
State Bar No. 24055612
Robert Shuttlesworth
State Bar No. 24033184
**Hagans**
3200 Travis, Fourth Floor
Houston, TX 77006
Telephone - (713) 222-2700
Facsimile – (713) 547-4950
Email: whagans@hagans.law
Email: rshuttlesworth@hagans.law

**Attorneys for Plaintiff**
**OneBOSS.IO, Inc.**

## Verification

My name is Stephen Myers. I am over the age of eighteen, of sound mind, and fully competent to make this verification. I am the founder and Chief Executive Officer of Plaintiff OneBOSS.IO, Inc. ("OneBOSS"). I have personal knowledge of the facts stated in Plaintiff's Verified Original Petition and Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction. I swear and affirm that the statements and facts contained in that document are true and correct.

My name is Stephen Myers, my date of birth is January 9, 1979, and my address is 15911 Champion Drive, Spring, Texas 77379, United States. I declare under penalty of perjury that the foregoing is true and correct.

Executed in Harris County, State of Texas, on the 9th day of October 2026.

Stephen Myers

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Robert Shuttlesworth on behalf of William Hagans
Bar No. 24055612
rshuttlesworth@hagans.law
Envelope ID: 121022361
Filing Code Description: Petition
Filing Description: Plaintiff OneBOSS.IO, Inc's Verified Original Petition and Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction
Status as of 10/12/2026 8:31 AM CST

Associated Case Party: OneBOSS.IO, Inc.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Janet Salas | | jsalas@hagans.law | 10/9/2026 5:05:35 PM | SENT |
| Mayra Munoz | | mmunoz@hagans.law | 10/9/2026 5:05:35 PM | SENT |
| Martha Molina | | mmolina@hagans.law | 10/9/2026 5:05:35 PM | SENT |
| William G. Hagans | 24055612 | whagans@hagans.law | 10/9/2026 5:05:35 PM | SENT |
| Robert E.Shuttlesworth | 24033184 | rshuttlesworth@hagans.law | 10/9/2026 5:05:35 PM | SENT |

**Cause No.: ____________________**

| | | |
|---|---|---|
| **ONEBOSS.IO, INC.,** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **HARRIS COUNTY, TEXAS** |
| **EHP, INC., ESSENTIAL HEALTH PLAN INC., EVERON TECHNOLOGIES, LLC,** | § § § | |
| | § | |
| **Defendants.** | § | **_____ JUDICIAL DISTRICT** |

**<u>Declaration of Stephen Myers</u>**

My name is Stephen Myers. I am over the age of eighteen, of sound mind, and fully competent to make this declaration. I am the founder and Chief Executive Officer of Plaintiff OneBOSS.IO, Inc. ("OneBOSS"). I have personal knowledge of the facts stated in this declaration, and they are true and correct. I make this declaration in support of OneBOSS's Verified Original Petition and Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction (the "Petition").

1. OneBOSS is a Texas software company. It develops, hosts, and licenses two proprietary software-as-a-service products: "Census Connect," which automates the extraction of payroll data from third-party payroll systems and generates census files, and "Proposal Engine," which calculates employee health-benefit proposals (together, the "Solutions"). OneBOSS hosts the Solutions in a logically segregated, multi-tenant environment and does not deliver or disclose the Solutions' source code to its customers.



SM

2. The source code, algorithms, models, designs, and know-how underlying the Solutions are proprietary to OneBOSS and derive independent economic value from not being generally known to, or readily ascertainable by proper means by, others who could profit from their use. The integration automation and workflows at the heart of the Solutions are the subject of a pending provisional patent application that I filed in January 2026. OneBOSS protects the secrecy of this information by, among other things, binding the parties who are given access to written confidentiality and license agreements, operating a logically segregated multi-tenant environment, and never delivering its source code.

3. On September 23, 2025, OneBOSS and Defendant EHP, Inc. ("EHP") entered into a Non-Disclosure and Confidentiality Agreement (the "NDA"). I signed the NDA for OneBOSS, and Slava Zatuchny signed for EHP. A true and correct copy of the NDA is attached to the Petition. The NDA permits EHP to use OneBOSS's Confidential Information only for the limited purpose of integrating and validating Census Connect, and it prohibits EHP from reverse engineering OneBOSS's Confidential Information.

4. On May 7, 2026, OneBOSS and EHP entered into a Master Software-as-a-Service Agreement and accompanying Order Form (together, the "MSA"), under which EHP subscribed to both Solutions for a fixed twelve-month term running into May 2027. A true and correct copy of the MSA is attached to the Petition. The MSA prohibits EHP, and any third party acting through it, from

reverse engineering, decompiling, disassembling, or deriving the source code, models, or algorithms of the Solutions, and requires EHP to pay a minimum monthly fee of approximately $40,000 regardless of utilization. EHP paid the agreed fees through August 31, 2026.

5. Defendant Everon Technologies, LLC ("Everon") is the software-development company for EHP and Defendant Essential Health Plan, Inc. ("Essential Health"), under common ownership and control as part of the X Benefit Group family of companies. Based on my dealings with them, Everon's developers take their direction from EHP's owners, and EHP directed Everon to integrate the Solutions into EHP's systems.

6. Between May and September 2026, in reliance on the NDA and the MSA and for the purpose of integration and validation, my team and I disclosed to EHP, Essential Health, and Everon the confidential design and operation of the Solutions. This included a demonstration of the Solutions to EHP's owners on May 4, 2026; numerous working sessions walking EHP and Everon personnel through census extraction, proposal generation, the pushing of deduction codes into payroll, the monthly change cycle, the audit, and the embed and API design; the delivery of OneBOSS's confidential design documents and user guides; and the provisioning of administrator and operator accounts for EHP and Everon personnel.

7. I have been told by two EHP employees that, in mid-September 2026, EHP sent personnel from Florida to Everon's offices in Pennsylvania to



BM

give Everon details of the proposal tool that OneBOSS created. Based on this information and on my own observations, I believe EHP and Everon are building a substitute for the Solutions. EHP has begun displaying a simplified proposal tool on its own website.

8 On September 29, 2026, EHP's Chief Operating Officer told me that EHP's leadership had directed him to hold off on the work and that EHP did not want me communicating directly with EHP's clients. When I told him it appeared EHP was trying to violate the NDA and to reverse engineer or recreate the Solutions, he did not deny it. On September 18, 2026, EHP reset the password on the account through which OneBOSS and EHP had worked, without telling OneBOSS. On September 23, 2026, EHP's counsel directed that OneBOSS's confidential security and compliance documentation be sent to Everon and a third party. On September 30, 2026, EHP directed OneBOSS to stop all implementation work.

9. Despite directing OneBOSS to stop work, EHP continues to depend on and use the Solutions while refusing to pay. As recently as this month, EHP's staff requested and received updated proposals for one of EHP's largest clients, and OneBOSS continues to run payroll integrations for EHP's clients. EHP's personnel continue to log in to OneBOSS's platform. EHP has not paid OneBOSS's current invoice, and neither EHP, Essential Health, nor Everon has responded to OneBOSS's October 2, 2026 demand or denied that it is reverse engineering or recreating the Solutions.

10. If EHP, Essential Health, and Everon are not enjoined, OneBOSS will suffer immediate and irreparable harm. Once Everon rebuilds the Solutions from OneBOSS's confidential designs and the information OneBOSS disclosed, the secrecy of OneBOSS's trade secrets will be permanently and irretrievably lost, and OneBOSS will lose its largest customer. These harms cannot be measured or repaired by an award of money damages. The risk is heightened because EHP is transitioning to a new internet domain and a newly formed entity, so any eventual money judgment may be uncollectible. For these reasons, injunctive relief is necessary to preserve the status quo and to prevent the irreversible destruction of OneBOSS's trade secrets.

My name is Stephen Myers, my date of birth is January 9, 1979, and my address is 15911 Champion Drive, Spring, Texas 77379, United States. I declare under penalty of perjury that the foregoing is true and correct.

Executed in Harris County, State of Texas, on the 9th day of October 2026.

[signature] Stephen Myers