**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **ONEBOSS.IO, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | **4:26-cv-09201** |
| **EHP, INC., ESSENTIAL HEALTH PLAN, INC., and EVERON TECHNOLOGIES, LLC,** | § | |
| | § | |
| **Defendants.** | § | |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S OPPOSED EMERGENCY MOTION TO EXTEND TEMPORARY RESTRAINING ORDER**

**TABLE OF CONTENTS**

I. NATURE AND STAGE OF THE PROCEEDING ........ 1

II. STATEMENT OF THE ISSUES AND STANDARD OF REVIEW ........ 2

III. SUMMARY OF THE ARGUMENT ........ 3

IV. BACKGROUND ........ 4

A. The parties and the agreements. ........ 4

B. The October 12 hearing and the TRO. ........ 5

C. OneBOSS's own evidence is that it never delivers its source code. ........ 7

D. Since removal, OneBOSS has negotiated and amended its complaint, but it has not moved for a preliminary injunction. ........ 8

V. ARGUMENT ........ 9

A. OneBOSS bears the burden, and the Court is not bound by the state court's *ex parte* findings. ........ 9

B. OneBOSS has not shown a reasonable probability of personal jurisdiction over Essential Health or Everon. 11

C. OneBOSS has not shown good cause to extend the TRO. 14

1. Removal did not prevent OneBOSS from seeking preliminary relief in this Court. 14

2. The premise of the TRO does not hold. 16

3. The harm OneBOSS describes is compensable in money. 17

4. Unfinished negotiations are not good cause. 18

D. The restraints cannot be extended as written. 19

E. The expedited-discovery provisions should not be extended and should be dissolved. 20

F. Alternatively, any extension should be limited to EHP, narrowed, and adequately secured. 22

VI. RESERVATION OF DEFENSES 23

VII. CONCLUSION AND PRAYER 23

Defendants EHP, Inc. ("EHP"), Essential Health Plan, Inc. ("Essential Health"), and Everon Technologies, LLC ("Everon") (together, "Defendants") file this response in opposition to Plaintiff OneBOSS.IO, Inc.'s Opposed Emergency Motion to Extend Temporary Restraining Order and Motion to Expedite Consideration (Dkt. 5) (the "Motion"). Defendants file this response subject to, and without waiving, the defenses and objections reserved in Part VI.

## I. NATURE AND STAGE OF THE PROCEEDING

OneBOSS sued Defendants in the 129th Judicial District Court of Harris County, Texas, and on October 12, 2026, that court signed a Temporary Restraining Order and Order Setting Hearing for Temporary Injunction (Dkt. 5-1) (the "TRO"). No Defendant appeared. The TRO states that the application "was presented with notice to the Defendants," but its only specific description of that notice is a footnote recording that OneBOSS "represented notice was given to counsel for Defendant EHP, Inc. and Essential HealthPlan, Inc. who did not appear." (Dkt. 5-1 at 1 & n.*.) The footnote does not mention Everon. Defendants removed the action on October 15, 2026 to 4:26-mc-01948. (Dkt. 5-2 at 1.) On October 19, 2026, Defendant filed an Amended Notice of Removal for administrative reasons, seeking a different case number: 4:26-cv-09201. (Dkt. 1).

On October 22, OneBOSS filed a First Amended Complaint that adds a claim under the Defend Trade Secrets Act (Dkt. 4) and filed this Motion, which asks the Court to extend the TRO by fourteen days, through November 9, 2026. (Dkt. 5 at 1.) The Court

granted the request to expedite and ordered any response filed by October 26, 2026. (Dkt. 8.)

OneBOSS has not filed a motion for preliminary injunction; its amended pleading, though captioned in part as an "Application for Preliminary Injunction," says that OneBOSS "seeks interim relief by separate motion." (Dkt. 4 at 1 & ¶ 71.) But no "separate motion" has been filed. By its own terms, the TRO expires on October 26, 2026. (Dkt. 5-1 at 7.) The initial pretrial and scheduling conference is set for January 11, 2027. (Dkt. 3.)

## II. STATEMENT OF THE ISSUES AND STANDARD OF REVIEW

The first issue is whether OneBOSS has shown good cause under Federal Rule of Civil Procedure 65(b)(2) to extend the TRO. A temporary restraining order expires on the date the court sets, "not to exceed 14 days," "unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension," and "[t]he reasons for an extension must be entered in the record." Fed. R. Civ. P. 65(b)(2). After removal, a state-court order becomes an order of this Court, which "is thereupon free to treat the order as it would any such interlocutory order it might itself have entered." *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1303 (5th Cir. 1988). The party who obtained the order bears the burden of justifying continued injunctive relief. *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 442–43 (1974).

The second issue is whether OneBOSS has shown a reasonable probability that this Court has personal jurisdiction over Essential Health and Everon such that any

restraint may run against them. *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 470–71 (5th Cir. 1985).

The third issue is whether any extension should (a) narrow the restraints to comply with Rule 65(d), 18 U.S.C. § 1836(b)(3)(A)(i), and Texas Civil Practice and Remedies Code § 134A.003(a), (b) dissolve the TRO's expedited-discovery and forensic-examination provisions, and (c) require adequate security under Rule 65(c).

## III. SUMMARY OF THE ARGUMENT

A temporary restraining order is meant to hold matters in place "just so long as is necessary to hold a hearing, and no longer." *Granny Goose*, 415 U.S. at 439. OneBOSS asks the Court to extend an order entered on about ninety minutes' email notice to one lawyer in Florida, which the TRO's own footnote records as notice to counsel for only two of the three Defendants, without filing the separate preliminary-injunction motion that its own amended pleading promises and that the extension would supposedly bridge to. Removal did not prevent OneBOSS from seeking preliminary relief here; instead, it filed an amended complaint that seeks a preliminary injunction but defers the request to a "separate motion" it has not filed. (Dkt. 4 ¶ 71.) The premise of the TRO, that Defendants are "presently reverse engineering" OneBOSS's hosted software, rests on a belief formed from what unnamed employees told OneBOSS's founder. OneBOSS's own sworn evidence is that it never gives customers its source code, and Everon, the company it accuses of building a substitute, has neither that code nor access to OneBOSS's platform. Without access, there is no threatened use to restrain. *CAE Integrated, L.L.C. v. Moov Techs., Inc.*, 44 F.4th 257, 263–64 (5th Cir. 2022). The harm OneBOSS describes, the

loss of a customer, is compensable in money, and unfinished settlement talks are not good cause.

OneBOSS has also not carried its burden of jurisdiction. By OneBOSS's own account, EHP is the only Defendant that agreed to the contracts at issue, and the amended complaint alleges no contact that Essential Health or Everon had with Texas, as opposed to with OneBOSS. And the restraints cannot be extended as written: they reach OneBOSS's "methods, and know-how" and bar Defendants from developing "any product or service that competes," which leaves Defendants guessing about what they may build and threatens the use of general knowledge that federal and Texas trade-secret law protects. The state-court discovery provisions, including a forensic examination of Everon's code and EHP's website tool, should not survive in a federal action governed by Rule 26(d).

Any extension should reach only EHP, take only the defined form Defendants proposed on October 19, end by November 9, 2026, or a ruling on any preliminary-injunction motion, dissolve the discovery provisions, and require adequate security.

## IV. BACKGROUND

### A. The parties and the agreements.

OneBOSS's claims rest on contracts between OneBOSS and EHP, including a Non-Disclosure and Confidentiality Agreement dated September 23, 2025 (Dkt. 4-5) (the "NDA"), and a SaaS Agreement dated November 15, 2025 (Dkt. 4-6) (the "SaaS Agreement"). Each of those agreements defines the "Parties" as OneBOSS and EHP, and each contains a Harris County forum clause. (Dkt. 4-5 at 2–3 & § 9; Dkt. 4-6 at 2, 10 & §

12.) OneBOSS pleads jurisdiction over EHP from, among other things, EHP's contracts with OneBOSS and their forum clauses. (Dkt. 4 ¶ 17.) It does not allege that Essential Health or Everon signed or agreed to any of those contracts. It alleges instead that each "accessed and used OneBOSS's Texas-based, hosted software Solutions" and "is working in conjunction with EHP that agreed" to them. (*Id.* ¶¶ 18–19.)

**B. The October 12 hearing and the TRO.**

The TRO was heard on the day OneBOSS's counsel gave notice of it. OneBOSS's counsel later explained that OneBOSS received the file-stamped petition "at approximately 10 am" on October 12, that the ancillary court "informed at 11 am that it would conduct the TRO hearing at 1pm," and that counsel "then provided you all the information as quickly as was possible." (Ex. A (Racusin Decl.) ¶ 3; Ex. A-1 at 1.) The notice itself was an email to Mr. Bolko, a Florida lawyer, attaching the petition and the proposed order and stating that the hearing was set "for today – October 12, 2026, at 1:00 p.m." (*Id.* at .) Mr. Bolko replied that he was in a meeting and asked for the Zoom link, which OneBOSS's counsel sent. (*Id.* at 2–3.) The hearing went forward without him.

Later that day, he wrote to OneBOSS's counsel to "go in the record" that the first notice had come "hour and a half ago before the hearing," and that he had asked counsel to tell the court he had "made every attempt to be present" and to ask for a continuance "so I can secure a local counsel." (*Id.* at 1.) OneBOSS's counsel then sent the signed TRO and offered to serve it formally "unless you will accept service on behalf of EHP, Inc. and/or Essential Health." (*Id.*) The TRO's own notation of notice likewise refers only to "counsel for Defendant EHP, Inc. and Essential HealthPlan, Inc." (Dkt. 5-1 at 1 n.*.)

OneBOSS alleges that it served Everon on October 16, four days after the TRO issued. (Dkt. 4 ¶ 14.)

The TRO defines the "Solutions" as OneBOSS's two hosted software-as-a-service products, "Census Connect" and "Proposal Engine," and defines "Confidential Information" as OneBOSS's "confidential and proprietary information concerning the Solutions, including their source code, algorithms, models, designs, architecture, methods, and know-how." (Dkt. 5-1 at 2.) It restrains Defendants from "(a) reverse engineering, decompiling, disassembling, or otherwise attempting to derive the source code, models, or algorithms of the Solutions; (b) using OneBOSS's Confidential Information or trade secrets to reverse engineer the Solutions or to develop any product or service that competes with the Solutions; and (c) disclosing OneBOSS's Confidential Information or trade secrets to any third party or affiliate." (*Id.* at 4.)

The TRO also authorized expedited discovery under the Texas Rules of Civil Procedure. It ordered a forensic examination and imaging of Everon's source-code repositories, which the court limited by interlineation to those "of OneBOSS's software, code or intellectual property," and of "the source code, scripts, and configuration files behind the proposal tool displayed on EHP's website." (*Id.* at 4–5.) It allowed each side three requests for production, to be answered within seven days, and two depositions per side, each lasting three hours, on five days' notice; the court struck the proposed order's broader production of communications and its list of named deponents. (*Id.* at 5.) A footnote attached to the website-tool provision states: "The understanding is that EHP is

using OneBOSS's code through their website." (*Id.* at 5 n.*.) The TRO required a bond, which OneBOSS satisfied with a $500 cash deposit. (*Id.* at 7; Dkt. 5-3.)

The TRO found that Defendants "are presently reverse engineering the Solutions." (Dkt. 5-1 at 2.) That finding rests on the Declaration of Stephen Myers, OneBOSS's founder. Myers testified that he had "been told by two EHP employees" that EHP sent personnel to Everon's offices in mid-September "to give Everon details of the proposal tool that OneBOSS created." He then concluded: "Based on this information and on my own observations, I believe EHP and Everon are building a substitute for the Solutions." (Dkt. 5-5 ¶ 7.) But Myers does not name the two employees. And the only observation he describes is that EHP "has begun displaying a simplified proposal tool on its own website." (*Id.*) At most, that shows EHP built a simpler product. It does not show that anyone decompiled or disassembled OneBOSS's code.

### C. OneBOSS's own evidence is that it never delivers its source code.

Mr. Myers testified that OneBOSS hosts the Solutions in "a logically segregated, multi-tenant environment and does not deliver or disclose the Solutions' source code to its customers," and that OneBOSS protects its secrets by, among other things, "never delivering its source code." (Dkt. 5-5 ¶¶ 1–2.)

Everon, the company OneBOSS says is building a substitute for the Solutions, has never received OneBOSS's source code, does not have access to OneBOSS's platform, and is not reverse engineering, decompiling, or disassembling OneBOSS's products. (Ex. B (Abele Decl.) ¶¶ 3–5.) OneBOSS's counsel acknowledged on October 16 that Defendants' position is "that they are not reverse engineering because they do not have

the source code or other materials necessary to reverse engineer" (Dkt. 5-6 at 10), and on October 19 Defendants' counsel confirmed that Defendants "are not reverse engineering OneBOSS's products" and offered to commit to that in writing (*id.* at 7).

### D. Since removal, OneBOSS has negotiated and amended its complaint, but it has not moved for a preliminary injunction.

On October 15, the day of removal, Defendants proposed a standstill of the TRO's discovery deadlines and noted that "Everon in particular received no notice of the October 12 hearing." (Dkt. 5-6 at 1–3.) OneBOSS agreed to postpone the forensic examination, the written discovery, and the depositions, but insisted that the TRO's restraints be continued past October 26. (*Id.* at 10–11.) Its counsel wrote that Defendants' "position thus far is that they are not reverse engineering because they do not have the source code or other materials necessary to reverse engineer. If that is the case, then extending these prohibitions should not be an issue." (*Id.* at 10.)

On October 19, Defendants proposed a letter agreement, through November 30, 2026, or a ruling on any preliminary-injunction motion, under which Defendants would not reverse engineer, decompile, or disassemble Census Connect or Proposal Engine, would not use OneBOSS's non-public source code or technical documentation to develop a competing product, and would not disclose that material, with carve-outs that included independent development, public information, EHP's and its clients' own data, general skills and experience, and the transition of EHP's clients to another platform. (Dkt. 5-6 at 7–8.) Defendants declined to carry forward the TRO's definition of "Confidential Information" because it "could be read to cover general industry knowledge and EHP's

own processes." (*Id.* at 8.) In return, Defendants asked for reciprocal commitments, including requiring OneBOSS to identify each claimed trade secret with reasonable particularity and to stop contacting EHP's clients about the dispute. (*Id.*) OneBOSS calls this an agreement "in principle to the substantive restraints on reverse engineering, use, and disclosure." (Dkt. 5 at 5.) It was a proposal for a letter agreement with reciprocal terms, not yet an agreement in and of itself.

On the afternoon of October 19, OneBOSS's counsel wrote that "[t]he depositions, written discovery responses, and forensic examination are postponed while we negotiate." (Dkt. 5-6 at 5.) On October 22, OneBOSS filed its amended complaint and this Motion.

## V. ARGUMENT

### A. OneBOSS bears the burden, and the Court is not bound by the state court's *ex parte* findings.

Once a case is removed, "federal rather than state law governs the future course of proceedings, notwithstanding state court orders issued prior to removal." *Granny Goose*, 415 U.S. at 437. Section 1450 was not meant "to turn *ex parte* state court temporary restraining orders of limited duration into federal court injunctions of unlimited duration." *Id.* at 435. *Granny Goose* "mandates no predetermined level of deference which a federal court must observe in reconsidering an interlocutory state court order," and the federal court "should not be fettered by considerations of deference from independently developing the record and then modifying or dissolving the order." *Nissho-Iwai*, 845 F.2d at 1303–04.

The burden remains on OneBOSS. "The burden was on the employers to show that they were entitled to a preliminary injunction, not on the Union to show that they were not." *Granny Goose*, 415 U.S. at 443. Injunctive relief "is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion." *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985).

The TRO calls for particular caution because no Defendant was heard. In *Granny Goose*, as here, the defendants received informal, same-day notice of the restraining-order hearing. The Supreme Court held that "this informal, same-day notice, desirable though it may be before a restraining order is issued, is no substitute for the more thorough notice requirements which must be satisfied to obtain a preliminary injunction of potentially unlimited duration," and that Rule 65(b)'s limits applied to the order "even though informal notice was given." 415 U.S. at 432 n.7.

The notice here was thinner still: an email, by its recipient's contemporaneous account, sent an hour and a half before the hearing to an out-of-state lawyer who said he was in a meeting and asked for a continuance to retain local counsel. (Ex. A-1 at 2–5.) The TRO's own footnote records notice only to counsel for EHP and Essential Health. (Dkt. 5-1 at 1 n.*.) The TRO's printed finding that OneBOSS gave notice to all Defendants "through their counsel and respective agents" and that all of them "had an opportunity to appear and be heard" (*id.* at 2) cannot be squared with that footnote as to Everon, and as to every Defendant it is a finding made on a one-sided record. Such a finding may be weighed, but it does not relieve OneBOSS of its burden or bind this

Court. *See Nissho-Iwai*, 845 F.2d at 1303–04. A federal court may show deference to rulings made before removal, but "[t]he sense of deference . . . should not amount to a feeling of compulsion." *Smith v. Amedisys Inc.*, 298 F.3d 434, 448 n.11 (5th Cir. 2002) (quotation omitted).

**B. OneBOSS has not shown a reasonable probability of personal jurisdiction over Essential Health or Everon.**

Rule 65 confers no jurisdiction. A court that enters an injunction must have "in personam jurisdiction over the party against whom the injunction runs," which "implies either voluntary appearance by him or effective service of process," and a "district court has no power to grant an interlocutory or final injunction against a party over whom it has not acquired valid jurisdiction." *Enter. Int'l*, 762 F.2d at 470 (quotations omitted). An injunction entered in those circumstances "is erroneous as a matter of law." *Id.* (quotation omitted).

When a defendant challenges jurisdiction on an application for interim relief, the plaintiff "is required to adequately establish that there is at least a reasonable probability of ultimate success upon the question of jurisdiction when the action is tried on the merits." *Id.* at 471 (quotation omitted). Essential Health and Everon make that challenge here. OneBOSS may respond that Rule 65(a) requires notice, not completed service of process. *Whirlpool Corp. v. Shenzhen Sanlida Elec. Tech. Co.*, 80 F.4th 536, 542–43 (5th Cir. 2023). But *Whirlpool* distinguished *Enterprise* because the defendant before it did not dispute that jurisdiction would exist once it was served, and it had attended and argued at the hearing. *Id.* Here, by contrast, Essential Health and Everon dispute that

jurisdiction exists at all, and neither was heard on October 12. Neither has appeared generally, and OneBOSS did not even request a summons from this Court for Essential Health until October 22. (Dkt. 7.)

*Enterprise's* reasonable-probability standard therefore applies, and OneBOSS cannot meet it on this record. For specific jurisdiction, the defendant's relationship with the forum "must arise out of contacts that the 'defendant *himself*' creates with the forum State," and "the plaintiff cannot be the only link between the defendant and the forum." *Walden v. Fiore*, 571 U.S. 277, 284–85 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). The analysis looks to "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there," *id.* at 285, and the requirements of due process "must be met as to each defendant," *id.* at 286 (quoting *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)).

OneBOSS pleads jurisdiction over EHP from, among other things, EHP's contracts and forum clauses. (Dkt. 4 ¶ 17.) For Essential Health and Everon it pleads only that each "accessed and used OneBOSS's Texas-based, hosted software Solutions" and "is working in conjunction with EHP," as EHP alone agreed to the forum clauses. (*Id.* ¶¶ 18–19.) Even if taken as true, neither allegation shows that Essential Health or Everon created any contact with Texas. The first describes only OneBOSS's choice to host its own software in Texas. That choice is OneBOSS's contact with Texas; a customer's use of the software from elsewhere is a contact with OneBOSS, not with Texas. *See Walden*, 571 U.S. at 285. The second describes EHP's contacts, not the contacts of Essential

Health and Everon, and EHP's contacts cannot be imputed to Essential Health and Everon because jurisdiction must be established as to each individual defendant.

OneBOSS's apparent theory is that non-signatories Essential Health and Everon are somehow bound by EHP's forum clauses. The Fifth Circuit has recognized that a non-signatory may be bound by a forum-selection clause, and thereby subjected to personal jurisdiction, if it is "closely related" to the contract. *Franlink Inc. v. BACE Servs., Inc.*, 50 F.4th 432, 441 (5th Cir. 2022). But the Fifth Circuit cautioned that non-signatories should have contractual provisions enforced against them only in "rare circumstances" and that "a narrow application of the doctrine is both appropriate and necessary." *Id.* at 442 n.8 (quotation omitted). It identified four considerations: "(1) common ownership between the signatory and the non-signatory, (2) direct benefits obtained from the contract at issue, (3) knowledge of the agreement generally and (4) awareness of the forum selection clause particularly." *Id.* at 442. And, applying the Third Circuit's standard, it required "some evidentiary basis, other than pure speculation," that a non-signatory was aware of the clause. *Id.* at 440, 442 (emphasis and quotation omitted). *Franlink* applied those factors after a bench trial, and it held two of the three non-signatories outside the clause. *Id.* at 442–43.

OneBOSS has not made that showing. The only sworn testimony it offers on those factors is Mr. Myers's statement that Everon is the software-development company for EHP and Essential Health, "under common ownership and control as part of the X Benefit Group family of companies," and that, "[b]ased on [his] dealings with them, Everon's developers take their direction from EHP's owners, and EHP directed Everon to

integrate the Solutions into EHP's systems." (Dkt. 5-5 ¶ 5.) The Defendants have already disclosed to this Court that as of October 19, 2026, the Xbenefit Group LLC does not own any interest in any Defendant. (Dkt. 1-1).

Mr. Myers does not identify any owner of any Defendant or say how he knows who owns them, and nothing in his declaration addresses whether Essential Health or Everon was aware of the forum clauses in EHP's agreements, the factor for which *Franlink* requires "some evidentiary basis, other than pure speculation." 50 F.4th at 440, 442 (emphasis and quotation omitted). Even taken at face value, that testimony describes a working relationship among the Defendants and their dealings with OneBOSS, not consent by Essential Health or Everon to be sued in Texas. OneBOSS's pleading that each company is "working in conjunction with EHP" adds nothing. Whatever OneBOSS may later prove, it has not shown a reasonable probability of jurisdiction over Essential Health or Everon today, and the Court should not impose any restraint on either of them. *Enter. Int'l*, 762 F.2d at 470–71.

### C. OneBOSS has not shown good cause to extend the TRO.

#### *1. Removal did not prevent OneBOSS from seeking preliminary relief in this Court.*

OneBOSS's central argument is that removal "cut off" the October 22 state-court hearing and that it "needs a brief extension to present its preliminary-injunction motion to this Court." (Dkt. 5 at 9.) But nothing has stopped OneBOSS from presenting that motion. Defendants removed on October 15, eleven days before the TRO expires. Rule 65 and this Court's procedures were available to OneBOSS from that day forward.

OneBOSS spent the week amending its complaint to add a federal claim and announced that it would seek interim relief "by separate motion." (Dkt. 4 ¶ 71.) It has not filed one. An extension "to bridge the interval until this Court can consider OneBOSS's forthcoming motion" (Dkt. 5 at 8) bridges to nothing.

OneBOSS's authorities do not hold otherwise. In *Elepreneurs Holdings, LLC v. Benson*, the defendants removed one day before the scheduled state-court hearing, and the court extended the order because the removal came on the eve of that hearing, because the plaintiffs needed more time to pursue a preliminary injunction, and because "Defendants do not appear to have been harmed by the grant of the present temporary restraining order." No. 4:21-CV-00026, ECF No. 5 at 3–4 (E.D. Tex. Jan. 14, 2021). Even then, it extended the order only through the earlier of the hearing on a preliminary-injunction request or fourteen days. *Id.*

In *Xtria, LLC v. International Insurance Alliance, Inc.*, the defendant had contested the restraining order in the state court before removal, and the federal court found good cause because removal had derailed the state court's expedited-discovery schedule and "[d]iscovery delays have prevented Xtria from filing its motion for a preliminary injunction before the expiration of the state court's amended temporary restraining order." No. 3:09-cv-02228, ECF No. 25 at 13 (N.D. Tex. Dec. 11, 2009). It also ordered the plaintiff to file its motion within eleven days. *Id.* at 14. Here, removal came a week before the scheduled hearing; OneBOSS agreed to postpone the discovery it now says it needed (Dkt. 5-6 at 5, 10–11); no Defendant was heard; and, as shown below, the restraints as written reach well beyond anything OneBOSS has shown it needs.

### *2. The premise of the TRO does not hold.*

The TRO's finding that Defendants "are presently reverse engineering the Solutions" rests only on Mr. Myers's belief, formed on information from two unnamed EHP employees and a single described observation: a "simplified proposal tool" on EHP's website. (Dkt. 5-1 at 2; Dkt. 5-5 ¶ 7.) "Speculative injury is not sufficient." *Holland*, 777 F.2d at 997.

Whatever the strength of that evidence on October 12, the record now undercuts the finding. OneBOSS's own sworn testimony is that it never delivers its source code to customers. (Dkt. 5-5 ¶¶ 1–2.) Everon, the company OneBOSS accuses of building a substitute, has never had that code, does not have access to OneBOSS's platform, and is not reverse engineering, decompiling, or disassembling OneBOSS's products. (Ex. B ¶¶ 3–5.) Defendants' counsel said the same to OneBOSS before it filed this Motion. (Dkt. 5-6 at 7, 10.) A company that has never had the source code to a hosted application is not in a position to decompile or disassemble it, and a company that cannot reach the application cannot derive anything from it.

The Fifth Circuit has held that a trade-secret plaintiff seeking interim relief must show that the defendant is "in a position to use" the trade secrets, and that where the defendant has no continued access to the claimed information, "there is no threatened future use of trade secrets." *CAE Integrated*, 44 F.4th at 263–64 & nn.19, 21 (quotation omitted). An inference of use drawn from the defendant's results "is insufficient." *Id.* at 263.

OneBOSS's theory is exactly that kind of inference: because EHP has displayed "a simplified proposal tool on its own website" (Dkt. 5-5 ¶ 7), OneBOSS concludes that Defendants must be rebuilding the "Solutions." The TRO's footnote reflects the same assumption, that "EHP is using OneBOSS's code through their website." (Dkt. 5-1 at 5 n.*.) That footnote records an "understanding," not a finding, and Mr. Myers does not claim that the website tool runs on, or contains, any OneBOSS code.

A benefits company that displays a proposal tool to its own customers is doing what such companies do. Independent development is a proper means under both the Defend Trade Secrets Act, which excludes from "improper means" "reverse engineering, independent derivation, or any other lawful means of acquisition," 18 U.S.C. § 1839(6)(B), and the Texas Uniform Trade Secrets Act, which defines "proper means" to include "discovery by independent development," Tex. Civ. Prac. & Rem. Code § 134A.002(4). Finally, the SaaS Agreement on which OneBOSS sues provides that "nothing in this Agreement shall restrict EHP or its Affiliates from independently developing products or services that may compete with OneBOSS, provided no OneBOSS Confidential Information is used in such development." (Dkt. 4-6 § 8A.)

**3. The harm OneBOSS describes is compensable in money.**

OneBOSS's irreparable-harm showing is that, if Defendants rebuild the Solutions, the secrecy of its trade secrets will be lost "and OneBOSS will lose its largest customer." (Dkt. 5-5 ¶ 10; Dkt. 5 at 6.) The first half depends on the reverse-engineering premise addressed above. The second half is a claim for lost revenue from a customer relationship, and OneBOSS has already put a price on it: its amended complaint seeks

"the present value of the fees it would have earned over the remainder of the term — on the order of $240,000 to $280,000." (Dkt. 4 ¶ 52; *see also id.* ¶ 2 (seeking "monetary relief exceeding $1,000,000").)

Defendants dispute that claim, but OneBOSS's own pleading shows that the loss it fears is measurable in dollars. Harm is irreparable only "if it cannot be undone through monetary remedies." *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012) (quoting *Interox Am. v. PPG Indus., Inc.*, 736 F.2d 194, 202 (5th Cir. 1984)). Harm from a past disclosure of confidential information "is compensable by money damages after trial." *Woodbolt Holdings, LLC v. Thomas*, No. 4:26-cv-01669, ECF No. 81 at 29 (S.D. Tex. May 27, 2026). Mr. Myers's further prediction that a money judgment "may be uncollectible" (Dkt. 5-5 ¶ 10) is not, and can never be, a showing that money cannot remedy the harm, and the TRO does not restrain any transfer of assets in any event.

**4. Unfinished negotiations are not good cause.**

OneBOSS argues that an extension would "keep[] all parties in their current negotiation positions." (Dkt. 5 at 5.) That is a request to use a court order as leverage in a business negotiation, not a showing that an extension is needed to prevent irreparable harm before a hearing can be held. If OneBOSS believes it needs interim relief, the appropriate course is to move for a preliminary injunction and carry its burden. *See Granny Goose*, 415 U.S. at 443–44 (Rule 65 "contemplates that notice and hearing shall result in an appropriate adjudication, *i.e.*, the issuance or denial of a preliminary

injunction, not in extension of the temporary stay" (quoting *Pan Am. World Airways, Inc. v. Flight Eng'rs' Int'l Ass'n*, 306 F.2d 840, 842 (2d Cir. 1962))).

**D. The restraints cannot be extended as written.**

Every restraining order must "state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained," Fed. R. Civ. P. 65(d)(1)(B)–(C), so that those enjoined "receive explicit notice of precisely what conduct is outlawed," *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974) (per curiam).

Restraints (b) and (c) fail that standard because they turn on the TRO's definition of "Confidential Information," which sweeps in OneBOSS's "designs, architecture, methods, and know-how." (Dkt. 5-1 at 2.) OneBOSS alleges that, over five months of integration work, it walked Defendants' personnel through "the entire process," including "census extraction, proposal generation, the pushing of deduction codes into payroll, the monthly change cycle, the audit, and the embed and API design." (Dkt. 4 ¶ 36(b).) Those are the standard functions of any payroll integration and benefits proposal system. Under the TRO, every Defendant employee who sat in those meetings is barred from using what OneBOSS calls its "methods" and "know-how" to develop "any product or service that competes with the Solutions." (Dkt. 5-1 at 4.) No one can tell from the order which methods are OneBOSS's, which are general industry practice, and which belong to EHP, whose own processes and client data were the subject of the integration.

That breadth also conflicts with the governing statutes. Congress directed that injunctive conditions in the employment context "be based on evidence of threatened misappropriation and not merely on the information the person knows." 18 U.S.C. §

1836(b)(3)(A)(i)(I); *see CAE Integrated*, 44 F.4th at 263 & n.17 (applying that principle in affirming the denial of a preliminary injunction against a former employee and his new employer). Texas law likewise permits an injunction only "if the order does not prohibit a person from using general knowledge, skill, and experience that person acquired during employment." Tex. Civ. Prac. & Rem. Code § 134A.003(a). An order that bars the use of "know-how" to build "any" competing product does exactly what those provisions forbid.

Nor do the parties' contracts supply what the TRO lacks. The NDA, to which only EHP is the only Defendant that is a party, excludes information that "is independently developed without use of Confidential Information" (Dkt. 4-5 § 2). Likewise, the SaaS Agreement, to which EHP is the only Defendant that is a party, preserves the right to develop competing products independently (Dkt. 4-6 § 8A). The TRO contains no such limit. Restraint (c), which bars disclosure "to any third party or affiliate," has a further problem: read literally, it bars each Defendant from discussing the case with co-defendants, counsel, or experts.

If the Court extends anything, therefore, it should extend only restraint (a), which Defendants proposed on October 19 to observe (Dkt. 5-6 at 7), and a narrowed version of restraints (b) and (c) limited to OneBOSS's non-public source code and non-public technical documentation, with the carve-outs described in Part V.F.

### E. The expedited-discovery provisions should not be extended and should be dissolved.

The Motion asks the Court to extend "the TRO" without saying whether the extension would carry forward the state court's expedited-discovery orders, including the

forensic examination of Everon's repositories and of EHP's website tool. (Dkt. 5 at 12; Dkt. 5-7 at 3 ¶ 2.) The Motion does say that the parties are negotiating to "sequence expedited discovery." (Dkt. 5 at 2, 5.)

The discovery provisions should not be extended. They were entered under the Texas Rules of Civil Procedure (Dkt. 5-1 at 4), and after removal "federal rather than state law governs the future course of proceedings." *Granny Goose*, 415 U.S. at 437. Under federal law, no party may seek discovery before the Rule 26(f) conference absent stipulation or court order, and the rule contains "no exemption for removed cases." *Riley v. Walgreen Co.*, 233 F.R.D. 496, 498 (S.D. Tex. 2005); Fed. R. Civ. P. 26(d)(1). A party seeking expedited discovery bears the burden of showing good cause, and its requests must be narrowly tailored; "[e]xpedited discovery is not the norm." *St. Louis Grp., Inc. v. Metals & Additives Corp.*, 275 F.R.D. 236, 239–40 (S.D. Tex. 2011) (quotation omitted).

OneBOSS has not even attempted that showing. A forensic examination of a non-contracting party's source code, ordered without notice to that party and premised on the assumption that OneBOSS's code is in it, is not narrowly tailored discovery; it is the most intrusive discovery available in a software case. The parties have already agreed to postpone the examination, the written discovery, and the depositions (Dkt. 5-6 at 5, 7, 10–11), and Defendants are preserving the relevant code repositories, documents, and communications (*id.* at 7; Ex. B ¶ 6 (Everon)), so nothing will be lost while the Court decides what discovery, if any, should proceed early. The Court should make clear that the discovery provisions expire with the TRO and, to the extent any part of the TRO is

extended, that they are dissolved, without prejudice to a properly supported Rule 26(d) motion.

### F. Alternatively, any extension should be limited to EHP, narrowed, and adequately secured.

If the Court finds good cause for some extension, it should enter Defendants' alternative proposed order. That order runs only against EHP; extends only the defined restraints and carve-outs Defendants proposed on October 19 (Dkt. 5-6 at 7–8), with disclosure permitted to counsel, experts, and the Court; ends by November 9, 2026, or an earlier ruling on any preliminary-injunction motion; dissolves the discovery provisions; sets a prompt schedule for any such motion; and preserves all defenses.

The Court should also require security in an amount proper to cover the costs and damages Defendants would sustain if wrongfully restrained. Fed. R. Civ. P. 65(c). The amount of security is committed to the Court's discretion. *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996). Because the bond ordinarily caps what a wrongfully restrained party can recover, a federal court may revisit a state-court bond after removal, either by increasing it or by requiring the plaintiff to undertake that the bond will not limit its liability. *See Continuum Co. v. Incepts, Inc.*, 873 F.2d 801, 803–04 (5th Cir.), *on reconsideration*, 883 F.2d 333, 335 (5th Cir. 1989) (software trade-secret injunction removed from Texas state court).

A $500 deposit bears no relationship to the potential cost of restraints that broadly bar Defendants from using vague "know-how" to develop "any product or service that competes" with OneBOSS's products. Instead, it is an extremely broad, world-wide, non-

competition restraint on three Defendants. If the Court extends any restraint, it should condition the extension on additional security in an amount the Court finds proper and on OneBOSS's written undertaking that the $500 deposit will not limit its liability for a wrongful restraint.

## VI. RESERVATION OF DEFENSES

Defendants submit this response solely to oppose the Motion. It is not a general appearance by any Defendant, an acceptance or waiver of service, a consent to personal jurisdiction, or a waiver of any defense or objection, all of which are expressly reserved, including Essential Health's and Everon's objections to personal jurisdiction and each Defendant's objections to process and service of process. An opposition to a motion is neither a Rule 12 motion nor a responsive pleading, and filing one does not waive any defense listed in Rule 12(b)(2)–(5). *See* Fed. R. Civ. P. 12(h)(1). A non-resident defendant "may participate in litigation without submitting to the court's jurisdiction so long as it maintains its objection to personal jurisdiction." *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 540 (5th Cir. 2019). Essential Health and Everon maintain theirs and will present them by timely Rule 12(b) motion.

## VII. CONCLUSION AND PRAYER

For these reasons, Defendants respectfully ask the Court to deny the Motion and to order that the TRO, including its expedited-discovery and forensic-examination provisions, expires by its terms on October 26, 2026. In the alternative, Defendants ask the Court to enter the alternative proposed order described in Part V.F. Defendants request all other relief to which they are entitled.

Dated: October 26, 2026

Respectfully submitted,

**HENDERSHOT COWART, P.C.**

By: *<u>/s/ Simon W. Hendershot, III</u>*
Simon W. Hendershot, III
Attorney-in-Charge
State Bar No. 09417200
trey@hchlawyers.com
Philip D. Racusin
State Bar No. 24054267
pracusin@hchlawyers.com
1800 Bering Drive, Suite 600
Houston, Texas 77057
Telephone: (713) 783-3110
Facsimile: (713) 783-2809
E-Service: EService@hchlawyers.com

**ATTORNEYS FOR DEFENDANTS EHP, INC., ESSENTIAL HEALTH PLAN, INC., AND EVERON TECHNOLOGIES, LLC, APPEARING SUBJECT TO ALL DEFENSES AND OBJECTIONS**

## CERTIFICATE OF SERVICE

I certify that on October 26, 2026, I electronically filed this response, with its exhibits and proposed orders, using the Court's CM/ECF system, which will send notice of the filing to all counsel of record, including William G. Hagans and Robert E. Shuttlesworth, Hagans, 3200 Travis, Fourth Floor, Houston, Texas 77006, counsel for Plaintiff OneBOSS.IO, Inc.

*<u>/s/ Philip D. Racusin</u>*
Philip D. Racusin